SMALL, P.J.T.C.
This case arises under New Jersey’s Gross Income Tax Act, N.J.SA. 54A:1-1 through 54A:9-27. The specific question to be addressed is whether the distributive share of partnership income received by a trust of which the plaintiff is the sole beneficiary should be treated on the trust beneficiary’s Gross Income Tax return as distributive share of partnership income under N.J.SA 54A:5-l(k) or income from a trust or estate under N.J.S.A. 54A:5-1(h). Due to the structure of the New Jersey Gross Income Tax and in particular, its prohibition on the netting of losses in one category of income against gains in another category of income, N.J.S.A. 54A:5-2, the characterization of income in this ease has significant consequences for the plaintiff.
For the reasons discussed below, I have determined that the Director’s position that the trust beneficiary’s income from the trust is to be characterized as a single category of income, and not as the separate categories of income received by the trust, is consistent with the statute and with the Director’s regulation adopted in 1999. It is also consistent with an article which appeared in the Director’s publication State Tax News in 1996, and with the Director’s instructions accompanying the 1996 tax returns.
The Director’s position in this case is inconsistent with the published instructions for the 1995 tax returns. The Director changed his position on how the income was to be reported between the times that the instructions for the 1995 and 1996 tax returns were published. There was no intervening statutory or regulatory change which caused the Director to change his in *357 structions. See Brunswick Corp. v. Director, Div. of Taxation, 135 N.J. 107, 110-11, 638 A.2d 805 (1994), aff'g 13 N.J.Tax 136 (App.Div.1993), aff'g 11 N.J.Tax 530 (1991) (holding that the Director may change his regulations when alternative interpretations are not inconsistent with the statute). But see Brunswick Corp., supra, 135 N.J. at 118-20, 638 A.2d 805 (Garibaldi, J., dissenting) (arguing that a legislative change is required).
Was the Director estopped from changing his position from 1995 to 1996? I find that he was not. The only cited authority for the change in instructions from 1995 to 1996 was an article in State 'Tax News. Was that sufficient authority to change the instructions for the 1996 return under the Administrative Procedures Act (the “A.P.A.”) (N.J.S.A. 52:14B-1 to -15), and Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984)? I hold it was not.
This case is before me on defendant’s, the Director of the New Jersey Division of Taxation (the Director’s), motion for summary judgment, and plaintiffs, Charles Kushner,[1] cross motion for summary judgment. On October 5, 2004, I denied both motions and requested further submissions and argument to assist me in determining whether the income from the trust should be characterized on the plaintiffs’ Gross Income Tax return as: (1) income of the same character as it had when received by the Trust; or (2) income of a separate entity to be characterized as income from a trust or estate. N.J.S.A. 54A:5-1(h).
I.
Plaintiffs timely filed a 1996 New Jersey Gross Income Tax return (the “return”) in 1997. The taxpayers reported no income ($0) from distributive shares of partnerships, no income ($0) from net pro rata shares of subchapter S corporations, and no income ($0) from trusts and estates. The line for other income on which *358 income from trusts and estates would be reported was left blank. The statements attached to the Kushners’ tax return for each of the categories of income detailed above reflected a loss. Under the Gross Income Tax (as opposed to the Federal Income Tax), the total for each category of income can either be positive or zero. N.J.S.A. 54A:5-2; N.J.A.C. 18:35-1.3(d)(5), -1.1(c)(6) (see examples in the regulations). The statements of income attached to the plaintiffs’ New Jersey Gross Income Tax return appear to be identical to the statements attached to the Kushners’ federal tax return. Under the Internal Revenue Code (“IRC”), there is no provision like N.J.S.A. 54A:5-2 (the anti-netting provision).
Statement 3 to the New Jersey return reflects income and losses from Charles Kushner’s distributive share of partnership income in 102 separate partnerships. When income and losses from these 102 partnerships are netted, the result is a loss of $1,159,095. The income in the amount of $353,267 from the Charles Kushner Trust (“The Trust”) was included and netted with the income and losses from the 101 other partnerships.[2]
Charles Kushner’s Schedule K-l Equivalent, which he received as a beneficiary of the Trust, detailing his income from the Trust, indicated that the Trust received income from interest in the amount of $2,482, income from dividends in the amount of twenty dollars ($20), income from the distributive share of partnership income in the amount of $349,855, and net pro rata shai’e of S Corporation income in the amount of $910.[3] The schedule K-l reported total gross income of the trust to be $353,267. This amount was distributed to Mr. Kushner as the sole beneficiary of the Trust, in accordance with the terms of the Trust, which requires all income to be distributed annually.
*359 The Trust was created by Charles Kushner’s parents and is a simple trust requiring the annual distribution of all income to the sole beneficiary. The initial Trustees were Mr. Kushner’s now deceased parents. Mr. Kushner’s sister and brother-in-law are the successor trustees. It appears from the K-l (statement of income for a trust beneficiary) that the Trust assets are comprised almost exclusively of interests in partnerships engaged in real estate investments. However, the exact nature of the partnerships and the precise business in which they are engaged cannot be determined by the evidence before me. Also, in the absence of further evidence, it is not possible to determine if the Trust was in fact carrying on as a partner in the partnerships or other business entities and whether or not Mr. Kushner was an active participant in the management of these entities.
The New Jersey Division of Taxation audited the return and determined that the $353,267 distributed to Mr. Kushner by the Trust should have been reported as a separate category of income, i.e., income derived from estates or trusts in accordance with N.J.S.A. 54A:5-l(h) and -3. Mr. Kushner had reported income from the Trust according to its character going into the Trust, principally distributive share of partnership income. Since Mr. Kushner had a net loss from 101 partnerships for federal tax purposes he could, in effect, shelter income from the Trust and pay no federal income tax on it. He contends that the New Jersey Gross Income Tax has the same reporting requirements and tax consequences.
The Director takes the position that the $353,267 in income from the Trust is a separate category of income and that pursuant to the anti-netting provision (N.J.S.A. 54A:5-2) of the Gross Income Tax, Mr. Kushner must pay tax on it as he has no losses from other trusts and estates.
Plaintiffs contest this assessment by asserting that the Trust is a pass-through entity, and therefore, the income generated by a trust from partnerships and distributed to a beneficiary retains its character and can be netted by the beneficiary against losses of a similar character, received directly from other partnership inter *360 ests. If plaintiffs’ argument were correct, it would result in a significant tax savings. In fact, for tax years 1994 and 1995, consistent with this interpretation and instructions at that time, the Director took the position that the Trust was a pass-through entity and that receipts from a trust that were required to be distributed to a beneficiary retained their character, and could be netted against losses of similarly categorized income.
The stark change in the Director’s position is illustrated by the following quotations of the 1995 instructions, an article in the 1996 State Tax News, and the 1996 instructions:
a. 1995 Instructions (for returns filed, in 1996).
Estates and Trusts
Filing Requirements for Beneficiaries. You must report income you received as a beneficiary of an estate or trust in the same manner as the estate or trust repoHed it to you. Enter interest on Lines 15a or b, dividends on Line 16, capital gains on New Jersey Schedule B, business or partnership income on Lines 17 or 20, etc. Enclose a copy of the Federal K-l with your return.
[Instructions to 1995 Form NJ 1040,5 (emphasis added).]
b. 1996 State Taic News
Gross Income Tax
Estate or Trust Income
Taxpayers have inquired about the proper return line on which to report income from an estate or trust and proper calculation of the amount of income from the estate included on the line.
The taxpayer receiving income from an estate and/or trust will calculate the income to be included on his return by using the information on the Federal K-l furnished to him as a beneficiary. The income reported from estates and/or trusts is a net figure derived from the items listed on the Federal K-l. Interest, dividends, capital gains, business or partnership income, etc. shown on the K-l will be netted together before the income is reported as “Other” income.
[ 25 State Tax News 8 (Winter 1996) (emphasis added). ]

c. 1996 Instructions (for returns filed in 1997)

Estates and Trusts
Filing Requirements for Beneficiaries. You must report the items of income or gain you receive as a beneficiary of an estate or trust on Line 25, “Other” income. Interest, dividends, capital gains, business or partnership income, etc. as listed on the Federal K-l form(s) you received are to be netted together before inclusion on the "Other” income line. Enclose a copy of the Federal K-l(s) with your return.
[Instructions to 1996 Form NJ 1040, 7 (emphasis added).]
*361 The Court has not been provided with an explanation as to why the Director changed his position nor does there appear to have been a new or amended statute or a revised regulation which was the foundation for this change. What is clear is that the Director’s position with regard to the reporting of income from a Trust in 1996 was the exact opposite of his position of the reporting of income from a Trust in 1995. The only procedures followed by the Director to implement the change was the publication of an article in the State Tax News. The article did indicate that the Director was changing his position. However, it did not explain why; it simply stated:
Instructions for the 1994 and 1995 NJ-1040 returns had instructed taxpayers to report the income from estates and/or trusts on multiple return lines. For 1996, the Form NJ-1040 instructions advise taxpayers to include the net income from estates and/or trusts as “Other” income.
25 State Tax News 8 (Winter 1996)
The Director’s instructions changed. The taxpayer continued to report his income from the Trust as he had in prior years in accordance with the Director’s prior years’ instructions.
I am faced with three questions. (1) Does income coming into the Trust pass out of the Trust with the same character as it had coming into the Trust or does it become a different category of income? See N.J.S.A. 54A:5-l(h). (2) In the absence of intervening regulatory or legislative action, is the Director estopped from changing his position with regard to this issue? (3) In the absence of intervening regulatory or legislative action, does the A.P.A., especially N.J.S.A 52:14B-2, prohibit such a change in position?
II.
The New Jersey Gross Income Tax Act imposes tax on the New Jersey gross income of every individual, estate, or trust. N.J.S.A 54A:2-1. Partnerships are not subject to taxation and individual business partners are liable for the tax in their separate or individual capacity. N.J.S.A. 54A:2-2. Similarly, S corporations are not subject to taxation and individual shareholders are liable for tax on their pro-rata share of S corporation income. N.J.S.A. 54A:5-9. Unlike partnerships or S corporations, trusts are sepa *362 rate, taxable entities. N.J.S.A 54A:5-3; Burke v. Director, Div. of Taxation, 11 N.J.Tax 29 (1990).
Income from a trust distributed to a beneficiary comprises a separate category of income under the New Jersey Gross Income Tax Act. N.J.S.A. 54A:5-l(h). The Act specifically includes, as a category of income, “[n]et gains or income derived through estates or trusts.” Ibid. The Division’s current regulations, adopted in 1999, further provide that income from an estate or trust is to be separately reported as “net gains or income from estates or trusts,” and is not to be included in the net profits from a business, income or loss from a partnership, or income or loss from an S Corporation. N.J.A.C. 18:35-1.1(c)6, proposed September 21, 1998, adopted February 18, 1999, and effective March 15, 1999,31 N.J.R. 779(a) (March 15,1999),[4] provides:
6. A taxpayer’s distributive share of income or loss from a partnership, S corporation, or estate or trust shall not be taken into account in determining a taxpayer’s net profits from business, regardless of the character of the income or the nature of the activities of the partnership, S corporation or estate or trust. Reporting of such income or loss shall be as follows:
i. Income or loss from a partnership shall be taken into account determining the taxpayer’s distributive share of partnership income described in N.J.S.A. 54A:5-lk. For rules governing the taxation of income derived by a taxpayer from a partnership, see N.J.A.C. 18:35-1.3
ii. Income or loss from an S corporation shall be taken into account in determining the taxpayer’s pro rata share of S corporation income described in N.J.SA.. 54A:5-1p.
iii. Income from an estate or trust shall be taken into account in determining the taxpayer’s net gains or income from estates or trusts described in N.J.S.A. 54A:5-1h.
*363 These general provisions have significance when a taxpayer has income or losses which must be placed in an appropriate category in order to determine the tax to be imposed on that income. N.J.S.A. 54A:5-2 specifically forbids a taxpayer from netting a loss in one category of income against income in another category of income:
Losses which occur within one category of gross income may be applied against other sources of gross income within the same category of gross income during the taxable year. However, a net loss in one category of gross income may not be applied against gross income in another category of gross income.
New Jersey cases have discussed the importance of characterizing income in applying the Gross Income Tax Act’s prohibition on the netting of gains and losses of different categories of income. N.J.S.A. 54A:5-2. In Smith v. Director, Div. of Taxation, 7 N.J.Tax 187 (1984), aff'd, 8 N.J.Tax 319 (App.Div.1986), aff'd, 108 N.J. 19, 527 A.2d 843 (1987), our Supreme Court held that in reporting his distributive share of partnership income, a taxpayer could net the categories of dividends, interest and gains realized by a partnership engaged in business as a securities dealer against business expenses, such as interest, of the partnership. The Director had attempted to disallow the partnership expenses by claiming that the dividend, interest, and gain income and the interest expenses had to be reported separately by the partners. Our Supreme Court held that the partnership income should be netted and then was to be taxed to the partner on a net basis because the partnership, an investment banking firm, was actively engaged in a business from which income from various sources was derived and for which various expenses were required. The income to the partners was from the enterprise as a whole, not separate sources of investment income. In response to the determination in Smith, the Director amended and adopted N.J.A.C. 18:35-1.25 and N.J.A.C. 18:35-1.14, 26 N.J.R. 1241 (1994), which spelled out the consequences of that opinion with respect to partnerships, but was silent with respect to trusts and estates.
The 1994 regulations dealt exclusively with income derived from partnerships and were, by the Director’s interpretation, intended to incorporate in regulations the Supreme Court’s ruling in Smith v. Director, supra. See 25 N.J.R. 677(a) (1993). However, even *364 after the Director adopted these partnership regulations, his position with respect to trusts and estates was contrary to his position with respect to partnerships (Instructions for 1995 tax returns) and remained so until: (a) the State Tax News article in 1996, (b) the instructions for the 1996 returns in 1997, and (c) the adoption of the above-cited regulations in 1999. See Miller v. Director, Div. of Taxation, 352 N.J.Super. 98, 799 A.2d 660 (App.Div.2002) (holding that the New Jersey Gross Income Tax Act expressly prohibits the netting of income and losses among the different categories of income); Sidman v. Director, Div. of Taxation, 19 N.J.Tax 484, 489 (App.Div.2001).
Therefore, a taxpayer may not apply a net loss in one category of income against income in another category. This rule is substantially different from the federal rules under the Internal Revenue Code, which treats a trust as a pass-through entity. See Smith, supra, 108 N.J. at 32, 527 A.2d 843. The Internal Revenue Code (IRC) makes it clear that distributed items maintain their character when the beneficiary receives them. Our Supreme Court has underscored the New Jersey legislature’s rejection of the federal income tax model in the design of the New Jersey tax:
Even a cursory comparison of the New Jersey Gross Income Tax and the Internal Revenue Code indicate that .they are fundamentally disparate statutes. The federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid the loopholes available under the Code.
[Smith, supra, 108 N.J. at 32, 527 A.2d 843]
Although the tax strategy chosen by the plaintiff may have resulted in favorable federal tax consequences, the State taxing statute does not follow the same taxing pattern as the IRC. Plaintiff cannot seek to support his argument that New Jersey treats trusts as a pass-through by way of analogous reasoning to the treatment of a trust by the IRC.
In tax matters, the tax consequences follow the business form that the taxpayer chooses. As our Supreme Court has stated: “[A] voluntary business decision ‘is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.’ ” General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 136, 416 A.2d 37 (1980), citing *365 Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974).
[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice whether contemplated or not ..., and may not enjoy the benefit of some other route he might have chosen to follow but did not. “To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.”
[Ibid, (citations omitted).]
Thus, what may seem to be an inconsequential difference in this case, the decision to hold an asset in a trust rather than direct ownership by the taxpayer, might result in substantially different tax treatment. The Director is not required to “acquiesce in and blindly accept the label that a taxpayer places on a transaction.” Centex Homes v. Director, Div. of Taxation, 241 N.J.Super. 16, 17, 574 A.2d 448 (App.Div.1990).
Plaintiff, Charles Kushner, was free to organize his affairs as he did, alternatively he (or his parents who created the Trust, or the current trustees, his sister and brother-in-law) could have opted to hold the partnership interests outside of the Trust. Had he owned those interests outright, his reporting position would have been correct, but neither he nor the Trustees chose this method for holding those assets. Thus, the tax consequences of placing assets in trust apply, and income received as the distributive share of the partnership income becomes income from an estate or trust when distributed to a beneficiary by the Trust. Consequently, income distributed from the Trust to the plaintiff may not be netted with losses from distributive shares of partnership income from partnerships not held by a trust. N.J.S.A 54A-.5-2. I therefore find that plaintiffs distributive share of income from the Trust once it is paid out to the Trust beneficiary, is to be classified as income from a trust pursuant to N.J.S.A. 54A:5-1(h), as opposed to a distributive share of partnership income under N.J.S.A. 54A:5-l(k). (N.J.A.C. 18:35-1.25 and 18:35-1.14, as amended in 1999). The income received by the Trust and distributed to the plaintiff under the terms of the Trust is to be taxed as a separate category of income — income from a trust or estate. I do not know why the assets were placed and held in the Trust, but I must *366 assume that there was a legitimate business reason for placing the partnership interests in the Trust. However, our inquiry does not end here.
III.
Two additional questions must be answered before I can simply affirm the Director’s assessments. A. Was the Director estopped from changing the instructions from his 1995 interpretation to his 1996 interpretation without an intervening change in the statutes or regulations? B. Was the adoption of the 1996 interpretation a violation of the A.P.A. of a type which would void an otherwise legitimate interpretation? Metromedia v. Director, Div. of Taxation, supra.
A.
The Director changed his position to the one discussed above, first by a note in a 1996 State Tax News, then in 1997 by a revised instruction for the 1996 return. He did not adopt a regulation under the A.P.A. until 1999. Although it seems inequitable for the Director to simply change his position from 1995 to 1996, the law rarely invokes the doctrine of estoppel against the government especially in taxing matters. Black Whale v. Director, Div. of Taxation, 15 N.J.Tax 338, 353-354 (1995), citing numerous cases, especially Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 296-99, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) (for the proposition that “equitable estoppel does not apply against the Division of Taxation when a taxpayer has relied on a previous position of the Division of Taxation”); Marrinan v. Director, Div. of Taxation, 17 N.J.Tax 47, 57-59 (1997).
The Director has been specifically permitted to change his position by the adoption of a regulation contrary to his prior regulation without an intervening statutory change. Brunswick Corp. v. Director, Div. of Taxation, supra, 135 N.J. at 109-11, 638 A.2d 805 (citing Metromedia, supra, and permitting the Director to include leased property as well as owned property in calculating *367 an income allocation factor, for Corporation Business Tax purposes under N.J.S.A 54:10A-6, without an intervening statutory-change). However, in that case, the Director changed his interpretation in accordance with the A.P.A. by proposing a regulation, explaining why he was changing his position, allowing for comments responding to the proposal, and ultimately adopting that regulation. Although that is what the Director did in this case; he did not do so until 1999. The Director’s current interpretation of the law, as well as his prior interpretation, are both consistent with the statute. Therefore, he is not estopped from changing his position.
B.
The only issue remaining concerns the validity of the Director’s pronouncement in State Tax News, that income from trusts or estates should be reported as “other income,” and whether it constituted an announcement of an administrative regulation requiring compliance with the A.P.A., and similarly, whether the instructions for the 1996 returns were required to be adopted in accordance with the A.P.A. I find that that interpretation was not adopted in accord with the A.P.A. and therefore, may not be enforced against the plaintiff prior to the adoption of the 1999 regulation. Metromedia v. Director, Div. of Taxation, supra.
N.J.S.A 54A:5-1(h) specifically includes as a category of income, “[n]et gains or income derived through estates or trusts.” The Division’s regulations further provide that income from a trust is to be separately reported as “net gains or income from estates or trusts” and is not to be included in net profits from business, income or loss from a partnership, or income or loss from an S corporation. N.J.A.C. 18:35 — 1.1(c)(6)(iii). This is consistent with Smith v. Director, supra. The 1996 Resident Income Tax Return does not include a separate line to report income derived from trusts and estates, but it does include a line for “other income.” The Division in 25 State Tax News 8 (Winter 1996) instructed taxpayers to include income derived through estates or trusts on the “other” line, line 25 of the return. The *368 instructions for the 1996 Resident Income Tax Return provides, at page 7, column 2, that income the taxpayer receives as a beneficiary of a trust should be reported on line 25, “other income.”
Plaintiffs rely on the fact that prior to 1996, the Director in his instructions to the tax return took the position that a trust was a pass-through entity and the items of income from the trust could be netted with items of a similar nature. Instructions to 1995 Form NJ 1040, page 5, column 2. In 1996, the tax year at issue, the Director changed its policy to one that stated trust income had its own character. See 25 State Tax News 8 (Winter 1996) and instructions to the 1996 Form NJ 1040, page 7, columns 1 & 2.
I have already determined that the Director’s interpretation of the statute resulting in the current assessment against the plaintiff in this case is permissible. The Director’s interpretation found in the 1996 State Tax News and the 1996 instructions to the tax return contradict the directions for the 1995 return.
The regulation on which the Director’s 1995 instructions were based was adopted in 1994, N.J.A.C. 18:35-1.25, and specifically limited the Smith decision to partnerships. It was not extended to trusts until adoption of the 1999 regulation.
In the absence of a specific legislative provision, the Director is permitted to adopt regulations “to enforce the provisions of the act.” N.J.S.A 54A:9-17. Such interpretative regulations must be adopted in accordance with the A.P.A.
The New Jersey Statute defines a “rule” as follows: “ ‘Administrative rule’ or ‘rule’, when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency----” N.J.S.A 52:14B-2(e). Our Supreme Court, in Metromedia Inc. v. Director, Div. of Taxation, supra, 97 N.J. at 328, 478 A.2d 742, provided a complete analysis of the nature of a “rule” as it affects administrative agency policy-making and regulation. Generally, rule making and not adjudication must address an agency determination that changes existing law and has widespread application. In distinguishing between rule making and *369 agency adjudication, the Metromedia court found that “[i]f the several relevant features that typify administrative rules and rule-making weigh in favor of action that is quasi-legislative in character, rather than quasi-judicial or adjudicatory, that balance should determine the procedural steps required to validate the ultimate agency action.” Id. at 332, 478 A.2d 742.
The Court in Metromedia identified the elements of agency action that when combined serve to define the action as an administrative rule or an administrative adjudication. A conclusion that an agency determination constitutes a rule, would generally encompass most or all of the following circumstances:
The rule would be “(1) ... intended to have wide coverage encompassing a largo segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.”
[Id. at 331-32, 478 A.2d 742 (emphasis added).]
 The Metromedia court emphasized the importance of formal rulemaking when the law, or its interpretation, is to be changed:
Similarly, an agency determination can be regarded as a “rule” when it effects a material change in existing law. See Crema [v. New Jersey Dept. of Environmental Protection], supra, 94 N.J. [286] at 302, 463 A.2d 910; K.C. Davis, Administrative Law Treatise § 7:25 at 186 (2d ed. Supp. 1982); Ford Motor Co. v. Fed. Trade Comm’n, 673 F.2d 1008, 1009 (9th Cir.1981), cert. den. 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982) (an agency determination that changes existing law and has wide-spread application must be addressed by rule-making and not adjudication). This feature relates not only to fairness to the individual party actually before the agency but to other persons as well. When an agency’s determination alters the status quo, persons who are intended to be reached by the finding, and those who will be affected by its future application, should have the opportunity to be heard and to participate in the formulation of the ultimate determination. See Bergen County Pines Hosp. [v. Dept. of Human Services] supra, 96 N.J. [456] at 469, 476 A.2d 784; Crema, supra, 94 N.J. at 303, 463 A.2d 910; Boller Beverages, Inc. [v. Davis], supra, 38 N.J. [138] at 151, 183 A.2d 64.
*370 [Metromedia, supra, 97 N.J. at 330, 478 A.2d 742]
See also Continental Gypsum Co. v. Director, Division of Taxation, 19 N.J.Tax 221, 235-39 (2000) (discussing Metromedia, supra, and Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 659 A.2d 1360 (1995) with regard to the types of “rules” which must be adopted in accordance with the A.P.A.).
Although the Metromedia decision discussed the prohibition against rule-making in the course of an audit (an individual adjudicatory process), its logic is equally applicable to the process by which the Director reverses his interpretation of a statute and his instructions for reporting income on the returns that the Director requires to be filed.
Our courts have found that “the State Tax News is not an authoritative pronouncement, nor does it have the binding effect of a statute or regulation.” Ambrose v. Director, Div. of Taxation, 198 N.J.Super. 546, 553, 487 A.2d 1274 (App.Div.1985). Where the subject matter of the pronouncement “reaches concerns that transcend those of the individual litigants and implicate matters of general administrative policy, rule-making procedures should be invoked.” Metromedia, supra, 97 N.J. at 331, 478 A.2d 742. In such a circumstance, the Director’s interpretation should be given deference in light of his expertise, but the court’s standard of review is considerably broader than it would have been had there been a formal regulation promulgated under the A.P.A.
The adoption of the Director’s changed policy in 1999 required adherence to the A.P.A. if the conditions articulated by the court in Metromedia existed. The Director’s statement in the State Tax News constituted an administrative regulation, and its publication did not follow the procedures of the A.P.A.
The Director’s statement had widespread application and was intended to apply generally and uniformly to all beneficiaries of trusts distributing income. The pronouncement was reflective of an administrative policy that was contrary to a previous policy that was relied upon by the taxpayers of New Jersey, who received and reported income received as beneficiaries of a trust. The 1996 requirement of reporting trust income as “other income” *371 is a material deviation from a clear, past position not articulated prior to 1996. The requirement of reporting income from trusts or estates as “other income” certainly transcends the concerns of individual litigants.
Despite the deference to be granted to the Director, I find that the statement in the State Tax News, did not rise to the level of administrative rule making, and did not comply with the A.P.A. Therefore, it is unenforceable just as the Director’s interpretation of the Corporation Business Tax obligations in Metromedia was unenforceable, even if correct.
Accordingly, although I find that the adoption of the regulation in 1999 expressed a proper and enforceable interpretation of the Director, his assertion of that interpretation against the plaintiff in this case for an earlier time period (i.e., prior to the March 15, 1999 effective date of the adopted regulation) is not enforceable.
For the foregoing reasons, summary judgment is granted for plaintiff and denied to the Director.

 The plaintiffs Charles and Seryl Kushner are husband and wife. For the 1996 tax year they filed a joint income tax return; however, the income specifically referred to in this case was income of Charles Kushner paid to him by the Charles Kushner Trust.

 It would appear that Mr. Kushner lumped all of the Trust income together and reported it as from partnerships as well as reporting it in the separate categories found on the Trust's return. This has no significant tax consequence.

 These amounts were reported separately on the return in the categories from which they were derived. Mr. Kushner may have over reported his income, double counting the $2,482, $20 and $910 amounts.

 The Director’s comment in the March 19, 1999 New Jersey Register is less candid than the 1996 State Tax News article which mentions the change. See supra, 22 NJ.Tax at 361. The 1999 comment says it "clariffies] that income distributed to a beneficiary of an estate or trust must be reported by the beneficiary in the category of income for 'net gains or income derived through estates or trusts.’” 31 N.J.R. 779(a) (March 15, 1999) (emphasis added). A complete change (in fact a reversal) in instructions is something different from a "clarification." The Director may have thought that the change had been effectively made in 1996 and that the regulation clarified (or better "codified") that change. This opinion finds that the change was not effective until the adoption of the regulation in 1999. See III B infra, 22 N.J.Tax at 367-71.