MENYUK, J.T.C.
This constitutes the court’s decision on the parties’ cross-motions for summary judgment in this matter. At issue is whether defendant Director, Division of Taxation, properly denied a refund of gross income taxes claimed on account of an exclusion of fifty percent of the capital gain on the sale of certain qualified small business stock. The exclusion is expressly permitted by federal tax law, namely, I.R.C. § 1202.
*534 The facts are as follows. Plaintiff was a resident of New Jersey during all of calendar year 2008. According to plaintiffs certification, as clarified with counsel at oral argument, she owned 16,970 shares of common stock in Vision Research, Inc. (“VR”). Her total tax basis in the shares was $4,456,760. In June 2008, plaintiff sold all of the VR shares[1] to Ametek, Inc. pursuant to a stock purchase agreement. The sales price was $17,236,114, subject to certain post-closing adjustments. During 2008, she received payments for the 16,970 VR shares totaling $15,850,968. The terms of the stock purchase agreement required the remainder of the sales price to be placed in escrow and retained for thirty-six months, after which it would be distributed pursuant to the terms of the stock purchase agreement and an escrow agreement.
Plaintiff retained a certified public accountant to prepare her federal and New Jersey 2008 income tax returns. On the original, timely filed federal return, plaintiff reported $11,776,851 as a long term capital gain on the sale of 16,970 VR shares. On her original New Jersey return, filed before April 15, 2009, plaintiff similarly reported $11,776,851 as net gains or income from disposition of property, which property was listed on Statement 1 to Schedule B as 16,970 VR shares, with a sales price of $16,233,611 and a basis of $4,456,760.
After the filing of her original federal and New Jersey tax returns for 2008, plaintiff and her tax advisors determined to amend those returns to report the sale of 16,570 VR shares as an installment sale of “qualified small business stock.” The federal tax code allows a taxpayer to exclude fifty percent of the gain from the sale of qualified small business stock held for more than five years. I.R.C. § 1202(a)(1). The defendant Director does not dispute that VR was a qualified small business within the meaning *535 of I.R.C. § 1202(d) or that the stock for which the exclusion was claimed was qualified small business stock as defined by I.R.C. § 1202(c).
Plaintiff timely filed an amended federal individual income tax return, Form 1040X, for 2008, reporting the sale of 16,570 VR shares as an installment sale of qualified small business stock, from which fifty percent of the gain was excluded under I.R.C. § 1202. The amended federal return also reported the installment sale of 400 VR shares without any § 1202 exclusion. Schedule D of the amended federal return reported capital gain of $6,202,359, as compared with $11,776,851 in capital gain reported on the original federal Form 1040.
Plaintiff also filed a timely amended New Jersey resident gross income tax return,[2] Form NJ-1040X for 2008. According to plaintiffs accountant, he contacted defendant’s office of Regulatory Services and confirmed with an employee of that office that gain from the sale of qualified small business stock should be reported on the amended New Jersey return in the same manner as it was reported for federal income tax purposes. In addition to the telephone conversation with the Division employee, plaintiffs accountant certified that he relied upon the instructions to Form NJ-1040, Schedule B, that read in pertinent part: “List at Line 1, Schedule B any New Jersey taxable transaction(s) as reported on your Federal Schedule D, indicating the gain or loss for each transaction in Column f.”
The amended New Jersey return reported the sale in the same manner as the amended federal return, namely as the sale of 16,570 VR shares as an installment sale of qualified small business stock, from which fifty percent of the gain was excluded under I.R.C. § 1202 and as an installment sale of 400 VR shares without *536 any § 1202 exclusion. The amended New Jersey return included a copy of the federal Schedule D that had been prepared for the amended federal return. The amended New Jersey return reported net gains from the disposition of property in the amount of $6,202,359, as compared with $11,776,851 on the original return. The amendment to the 2008 New Jersey gross income tax return resulted in a claimed $499,748 overpayment of 2008 New Jersey gross income taxes.
The Division of Taxation audited the amended New Jersey return and disallowed the fifty percent exclusion on the sale of the 16,570 VR shares which, for federal purposes, was qualified small business stock. It issued a notice of deficiency on October 21, 2009, in the amount of $32,160 plus interest.[3] The plaintiff timely protested the Division’s audit determination, which was upheld in the Director’s final determination letter of September 28, 2010. Plaintiff filed a timely appeal with the Tax Court.
There is no dispute as to any material fact. Accordingly, disposition of this action by summary judgment is appropriate. R. 4:46—2(c).
The defendant Director does not question that plaintiffs amended federal return appropriately excluded fifty percent of the gain from the sale of 16,570 VR shares pursuant to I.R.C. § 1202(a). The Director maintains, however, that there is no provision in the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to 54A:9-25.1 (the “Act”), that provides for a similar exclusion.
Plaintiff, on the other hand, argues that N.J.S.A. 54A:5-lc specifically provides for the incorporation of federal tax principles and concepts in the calculation of net gains on the disposition of property and that the federal exclusion allowed by § 1202 should *537 be applied in calculating the net gain for gross income tax purposes. Plaintiff further asserts that the Director is bound by his instructions for filing Form NJ-1040, which direct the taxpayer to list at line 1, Schedule B, any New Jersey taxable transaction as reported on the federal Schedule D.
The court concludes that the Act does not permit the construction of N.J.S.A 54A:5-le (“Section 5-1 c”) sought by plaintiff. The court also concludes that, to the extent that the Director’s instructions for filing Form NJ-1040 are contrary to the Act, they must be disregarded. The Director’s denial of plaintiffs refund claim and his assessment of additional tax are therefore affirmed.
The principles of statutory construction applicable here were set out in Koch v. Director, Division of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999), where the issue was also the calculation of net gain under Section 5-le. Courts must first consider the plain language of the statute. Ibid. The statutory language should be read according to its ordinary meaning, provided that the ordinary meaning comports with the legislative intent. Ibid. “If the statute ‘is clear and unambiguous on its face and admits of only one interpretation, [courts should] delve no deeper than the act’s literal terms to divine the Legislature’s intent.’” Ibid, (citation omitted). When the statutory provision can be read in more than one way, the provision should not be construed in a way that sacrifices the statutory scheme read as a whole, but should be construed in an integrated way and, if possible, in harmony with all of the provisions of the statutory scheme, and in a way that does justice to its overall meaning. Ibid, (citations omitted).
Koch further notes that our courts generally defer to an agency’s interpretation of a statute that the agency is charged with enforcing, and have recognized the Director’s expertise in specialized and complex areas of taxation. Id. at 8, 722 A.2d 918. However, courts do not totally defer to the Director’s interpretation of tax statutes and remain the final authorities on issues of statutory construction. Ibid.
N.J.S.A. 54A:5-1c (“Section 5-1c”) provides, in pertinent part:
*538 New Jersey gross income shall consist of the following categories of income:
[[Image here]]
c. Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes, except as expressly provided for under this act[.j
[[Image here]]
The term “net gains or net income” shall not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes.
Accordingly, Section 5-le explicitly incorporates three federal tax concepts that are to be used in determining net gains from the disposition of property: (1) the method of accounting used for federal income tax purposes; (2) the use of the federal adjusted basis; and (3) the exclusion of gains to the extent federal rules require nonrecognition. Koch v. Director, Div. of Taxation, supra, 157 N.J. at 6-7, 722 A.2d 918; Walsh v. Div. of Taxation, 10 N.J.Tax 447, 459 (Tax 1989), aff'd per curiam, 240 N.J.Super. 42, 572 A.2d 222 (App.Div.1990).
The plain words of Section 5-1c do not require the exclusion of half the gain on a sale of qualified small business stock. I.R.C. § 1202 is not a method of accounting, it does not affect the calculation of the basis of the VR shares, and is not concerned with the recognition or nonrecognition of income. When asked at oral argument which of the three explicit references to federal tax law made by Section 5-1c were implicated here, plaintiffs counsel was reluctant to identify any one in particular. When pressed, he suggested that nonreeognition of income might be applicable. As counsel acknowledged, however, the issue presented here is not one of timing. That is, I.R.C. § 1202 does not defer the recognition of income. The income in question was plainly recognized in the year in which it was received and was reported as such for federal income tax purposes. By virtue of the provisions of I.R.C. § 1202, however, fifty percent of the income recognized was *539 expressly excluded in calculating income subject to the federal income tax.
Rather than relying on any of the three specific references to federal tax law contained in Section 5-1c, plaintiff asserts that New Jersey case law makes a distinction between transactions that are clearly sales or other dispositions of property, and transactions that are not. Essentially, it is the taxpayer’s position that if a transaction is a disposition of property within the meaning of Section 5-1c, our courts have construed the Act as having adopted federal tax rules for the calculation of net gains from the disposition of property, regardless of whether federal accounting methods, federal adjusted basis or federal nonrecognition rules are implicated. She argues that because the transaction in issue—the sale of 16,570 VR shares—is clearly a sale of property to which Section 5-1c is applicable, the calculation of the gain is governed by incorporated federal tax rules, namely I.R.C. § 1202.
Plaintiff points to a series of cases that have concluded that non-business bad debts are nondeductible. See King v. Director, Div. of Taxation, 22 N.J.Tax 627, 632 (App.Div.2005); Walsh v. Director, Div. of Taxation, 15 N.J.Tax 180, 185-86 (App.Div.1995); Vinnik v. Director, Div. of Taxation, 12 N.J.Tax 450, 454 (Tax 1992). Based on these cases, plaintiff asserts that the courts have developed what amounts to a “gatekeeper” test: if a transaction is not a “sale, exchange or other disposition of property” described by Section 5-1c, then Section 5-1c and its incorporated federal income tax concepts are inapplicable. Conversely, plaintiff argues that if the transaction in issue is a disposition of property to which Section 5-1c is applicable, then federal tax concepts are incorporated in their entirety.
More precisely read, however, the “bad debt” cases cited rejected the application of federal tax law which has the effect of converting non-business bad debt to a capital loss. I.R.C. 166(d)(1)(B). Vinnik, Walsh and King stand for the proposition that “when the Legislature intended to incorporate federal tax *540 concepts it did so explicitly.” Smith v. Director, Division of Taxation, 108 N.J. 19, 33, 527 A.2d 843 (1987).
Smith v. Director, the Court’s earliest examination of the Act, contains an extensive review of the Act’s history and the Legislature’s objectives. Smith, supra, 108 N.J. at 30-32, 527 A.2d 843. The Court reached the conclusions that the Act and the federal tax code are “fundamentally disparate statutes,” and that the Legislature had rejected the federal income tax as a model in favor of a gross income tax in order to avoid loopholes. Id. at 32, 527 A.2d 843. Quoting from various legislative statements, the Court explained “that the Act was intended to include ‘income from all sources (including income from tax preferences or tax sheltered sources under the Federal Income Tax law) except for items of excludible income defined in Chapter 6.’ ” Id. at 30, 527 A.2d 843. Further, “ ‘the bill was intended as a tax on income, shorn of the deductions and items of tax preference in the Federal Income Tax.’ ” Ibid. The Court also noted that the chairman of the Assembly Taxation Committee had observed that objections to the proposed state income tax at public hearings centered on the inequity of the federal income tax and its “special treatment of capital gains, depreciation on commercial real estate and tax exempt securities,” which were viewed as “loopholes” benefiting the rich. Id. at 31, 527 A.2d 843, quoting Richard Van Wagner, The New Jersey Gross Income Tax: An Analysis from Background to Enactment, 2 Seton Hall Legislative Journal 100, 111 n. 33 (1977).
In Vinnik, supra, 12 N.J.Tax at 452, the Tax Court rejected plaintiffs contention that non-business bad debts fell within Section 5-lc because I.R.C. 166(d)(1)(B) treated such debts as a loss from the sale or exchange of a capital asset. The court concluded that “the overall statutory scheme [of the Act] is evident. Except for business-related expenses of proprietorships and partnerships no deduction is allowable unless specifically authorized by statute.” Id. at 454. See also Walsh, supra, 15 N.J.Tax at 186, affirming the decision below for substantially the reasons expressed by the Tax Court judge. As related by Appellate Division in Walsh, the Tax Court had once again disposed of the taxpayers’ argument *541 that the Act incorporated the federal treatment of a non-business bad debt contained in I.R.C. 166(d)(1)(B), on the ground that the Legislature had rejected the federal income tax model in drafting the Act. Walsh, supra, 15 N.J.Tax at 183. In King, supra, 22 N.J.Tax at 632, the Appellate Division acknowledged that federal tax law assumes that a taxable disposition of property has occurred when a non-business debt becomes worthless, thereby implicating capital gains or loss treatment. It again declined to give such debt similar treatment under the Act, based upon New Jersey’s conscious refusal to pattern its gross income tax on the federal tax code. Ibid.
Plaintiff is also incorrect in her contention that, apart from the non-business bad debt cases, our courts have construed Section 5-lc to incorporate federal tax concepts in their entirety. Plaintiff views both Koch, supra, and Baldwin v. Director, Division of Taxation, 10 N.J.Tax 273 (1988), aff'd per curiam, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990), as construing Section 5-1c to expansively incorporate federal tax principles and concepts. It is true that both cases used broad language suggesting that Section 5-1c should be construed to incorporate federal tax law more comprehensively than indicated by the three explicit references contained in the statute:
Courts have interpreted section 5-le expansively and have recognized that section 5-lc “is not limited to the recognized overall methods of accounting, such as the cash method or accrual method, but rather was intended to include any method or system as used for federal tax purposes ‘by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.’ ”
[Koch, supra, 157 N.J. at 10, 722 A.2d 918, quoting Baldwin, supra, 10 N.J.Tax at 284].
In Koch, the issue was whether the taxpayer was required to use his federal tax basis in computing net gain from the sale of a partnership interest under the Act. The federal basis had been reduced by partnership losses that were deductible against other income for federal tax purposes, but had been of no benefit under the Act by virtue of N.J.S.A. 54A:5-2, which prohibits a taxpayer from deducting losses in one category of gross income against income in another category. The Director contended that the *542 plain language of Section 5-1c required the use of the federal basis. The taxpayer argued that requiring him to reduce the basis of his partnership interest for losses for which he received no benefit under the Act would result in taxing a gain larger than his economic gain, and would violate the plain language of Section 5-1c that requires the use of federal methods of accounting and federal nonrecognition principles. Koch, supra, 157 N.J. at 6, 722 A.2d 918.
In other words, Koch did not involve adopting federal tax concepts that were not explicitly referred to in the statute, but was instead concerned with harmonizing three specific and conflicting references. The Court concluded that the construction of Section 5-1c sought by the Director would have the result of taxing a return of capital, contrary to the intent of the Legislature which had intended to tax only economic gain. Id. at 9, 722 A.2d 918. According to the Court, the Director’s approach ignored those parts of Section 5-1c that directed the use of methods of accounting allowed for federal income tax purposes and federal nonrecognition provisions. The broad language quoted above served to introduce the court’s conclusion that the term “methods of accounting” as applied under these circumstances included the federal tax concept that “losses not passed through would not reduce a partner’s basis, and gain would be determined by computing the difference between a partner’s cost basis (unreduced by partnership losses) and the proceeds received from the sale of the partnership interest.” Id. at 11, 722 A.2d 918.
In Baldwin, the court construed the terms “method of accounting allowed for federal income tax purposes,” and “adjusted basis used for federal income tax purposes” as both were used in Section 5-1c. The taxpayers sought to offset some of the gain on the sale of their residence with a loss on the sale of a lawn mower. Baldwin, supra, 10 N.J.Tax at 275. The taxpayers maintained that Section 5-1c contained no limitation as to the types of losses that could be used to offset gain, although they conceded that under federal tax law, I.R.C. § 165(c), such personal losses are not deductible. Id. at 283. It was their position that Section 5-1c permitted a personal loss to be offset from a gain, because net *543 gain is to be determined “in accordance with the method of accounting allowed for federal tax purposes.” They construed that term to mean “an acceptable overall method of accounting, such as a cash basis method or accrual basis method.” Id. at 283. Because they were cash basis payers for federal income tax purposes, they contended that they should be permitted to deduct their personal loss from their realized gain. Id. at 283-84. In response, the Director argued that Section 5-1c mandated the use of federal basis, and “[ijnasmuch as plaintiffs loss is not deductible under § 165(c) of the IRC, ... no adjusted basis is actually ‘used for federal income tax purposes’ even though hypothetically it could be so used.” Id. at 286.
The court rejected plaintiffs’ construction of the term “method of accounting allowed for federal income tax purposes” as too limited, and found that Section 5-1c “was enacted with federal income tax concepts in mind, which is why it specifically referred to methods ‘allowed for federal income tax purposes’ in the context of determining gains and losses for tax purposes.” Id. at 284. The court concluded that, in view of the legislative history of the Act, which was designed to avoid tax shelter devices and loopholes, the Director’s construction of the Act was readily inferable from the statutory language and was reasonable, and therefore must prevail. Id. at 286.
It is trae that the language used in Baldwin can be read expansively. As limited by its facts, however, Baldwin construed Section 5-1c as incorporating federal tax concepts to the extent necessary and to the extent consistent with the legislative purpose of the Act in order to determine gain and loss. That is vastly different from a wholesale adoption of federal tax law, including federal tax preferences such as those contained in I.R.C. § 1202. Notably, plaintiffs gain on the sale of VR shares was calculated in exactly the same way for federal tax purposes as it was for purposes of the Act. I.R.C. § 1202 simply permits exclusion of half that gain, while the Act does not.
Moreover, Guzzardi v. Director, Division of Taxation, 15 N.J.Tax 395 (Tax 1995), aff'd per curiam, 16 N.J.Tax 374 (App. *544 Div.1996), cited by plaintiff in support of its position that the courts of this state have construed Section 5-1c in a manner that amounts to a wholesale adoption of federal tax law, in fact explicitly disavowed any such suggestion. Guzzardi rejected the taxpayer’s contention that, as construed in Baldwin, the Act incorporated the federal tax provisions for the taxation of capital gains in their entirety, including the capital loss carryover provisions of the federal tax code. The court concluded that there was no need to decide “the scope of [Baldwin’s] reference to federal income tax accounting methods in N.J.S.A. 54A:5-1c.” Guzzardi, supra, 15 N.J.Tax at 403. Rather, the issue was controlled by N.J.S.A. 54A:5-2, which provides that only losses that are incurred during the taxable year are deductible. Commenting further on Baldwin, the court added:
Ultimately, it is the intent of the New Jersey Legislature that must determine the outcome of this case. It may be quite true, as Baldwin suggests, that the reference to federal income tax accounting methods in the Gross Income Tax Act, is not limited to the accounting provisions of the Internal Revenue Code, i.e., I.R.C. §§ 446-474. In fact, it may be necessary to incorporate some of the Code’s substantive concepts of gain and loss if N.J.S.A. 54A:5-1.c is to be workable at all. Clearly, however, the Legislature did not intend to incorporate through N.J.S.A. 54A:5-1.c all the substantive provisions of the Code relating to gains and kisses, and just as clearly it did not intend to allow capital loss carryovers.
[Guzzardi supra, 15 N.J.Tax at 403-404 (emphasis added) ].
Contrary to plaintiffs arguments, then, there is nothing in either Section 5-1c or the cases construing that section that incorporates all federal tax concepts and principles. It was the intent of the Legislature in drafting the Act to avoid including the loopholes and tax preferences contained in the federal tax code. I.R.C. § 1202 is exactly such a preference, in the form of an incentive for a particular type of investment. The Director’s determination to compute plaintiffs income subject to tax without application of the federal exclusion was, therefore, correct.
Plaintiff maintains, however, that the directions for reporting net gains or income from the distribution of property contained in the instructions to the 2008 Form NJ-1040 constitute, in effect, the Director’s interpretation of Section 5-lc that incorporates federal tax principles and concepts, including the exclusion provided by I.R.C. § 1202. Those instructions direct taxpayers to *545 “|l]ist at Line 1, Schedule B any New Jersey taxable transaction(s) as reported on your Federal Schedule D, indicating the gain or loss for each transaction in column f.” Instructions, 2008 New Jersey Resident Form NJ-1040 at 44, available at http://www.state.nj.us/treasury/taxation/pdf/otherforms/tgiee/2008/081040i.pdf (last visited Sept. 10, 2012) (hereinafter “Instructions ”). Plaintiff contends that plaintiff is bound by those instructions until such time as he adopts a rule in accordance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15 (“APA”).
A complete reading of the Director’s instructions to the 2008 Form NJ-1040 makes plain that the Director has not construed Section 5-lc to wholly incorporate federal tax law. The instructions to Schedule B state, in pertinent part: “Use Schedule B to report all other capital gains and income from the sale or exchange of property. In arriving at your gain, you may deduct expenses of the sale and your basis in the property. The basis to be used for computing gain or loss is the cost or adjusted basis determined for federal income tax purposes.” Instructions at 44. In other words, the instructions clearly state what may be deducted in computing gain, and those items do not include the excludible gains provided by I.R.C. 1202.
The instructions also note that the Act has uncoupled from certain changes in Federal depreciation and expense deduction limits, Instructions at 44, and continue by advising that if the taxpayer has sold an interest in a partnership, a sole proprietorship, or rental property, the taxpayer may be required to use a New Jersey adjusted basis. Ibid. See, e.g., Koch, supra, 157 N.J. at 11, 722 A.2d 918 (the basis of a partnership interest under the Act was the federal basis increased by losses allowed as deductions for federal tax purposes, but not allowed under the Act). The instructions additionally provide that the Act “does not distinguish between active and passive losses, nor does it authorize carryback or carryforward of such losses.” Instructions at 44-45. See, e.g., Guzzardi, supra, 15 N.J.Tax at 401 (Act does not incorporate federal capital loss carryovers). These additional instructions plainly illuminate the limited portion of the instructions relied upon by plaintiff and clarify that a transaction as *546 reported for purposes of the Act may be different than the same transaction as reported for federal income tax purposes.
Plaintiff relies on Kushner v. Director, Division of Taxation, 22 N.J.Tax 353 (Tax 2005) to support its contention that the Director is bound by the instructions to report the transaction as it was reported on the federal Schedule D. In Kushner, the issue was whether the distributive share of partnership income received by a trust for which the taxpayer was the sole beneficiary was to be treated on the taxpayer’s 1996 gross income tax return as a distributive share of income under N.J.S.A. 54A:5-1k, or as net gain or income derived through trusts or estates under N.J.S.A. 54A:5-1h. Id. at 356. The court found that the Director changed his position between 1995 and 1996. The instructions to the return for tax year 1995 explicitly directed taxpayers to report the income in the same manner as the trust or income reported it to the taxpayer, that is, as interest, dividends, capital gains, or business or partnership income, as the case may be. Id. at 360. The instructions for the 1996 return directed the taxpayer to report income received as the beneficiary of an estate or trust as “other” income, and that the income listed on the Federal K-l form provided by the estate or trust to the taxpayer as interest, dividends, capital gains, and so forth, must be netted together before inclusion in the “other” income line of the NJ-1040. Ibid.
The court was not provided with an explanation of the new interpretation, nor was there any new or amended statute or a revised regulation that explained the change in the instructions. Although the court concluded that the Director’s new position was the correct construction of the Act, id. at 365, and that the Director was not estopped from changing his position, id. at 366, it nevertheless held that the Director’s new interpretation of the statute could not be enforced against the plaintiff, because the Director had not promulgated a regulation in accordance with the APA, and Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 478 A.2d 742 (1984). Kushner, supra, 22 N.J.Tax at 370-71.
*547 By contrast, there is no change in position here. Unlike the instructions at issue in Kushner, the instructions for the 2008 NJ-1040 simply omitted any specific instructions regarding the calculation of net gain on the sale of stock qualified as small business stock by I.R.C. § 1202. Plaintiff contends that this omission amounts to an adoption of all federal tax principles and concepts used in calculating net income and net gain. However, it is well settled that the Director’s interpretation “ ‘cannot add to a statute something which is not there.’” GE Solid State v. Director, Division of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993); Fedders Fin. Corp. v. Director, Division of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984) (both quoting from Service Armament Co. v. Hyland, 70 N.J. 550, 563, 362 A.2d 13 (1976).)
It appears that the Director has attempted to include in the instructions to the NJ-1040 specific examples of the Act’s departure from federal income tax treatment, and has noted at least two instances where the courts have provided guidance: (1) from Koch, supra, the use of a New Jersey rather than the federal basis in computing gain from the sale of a partnership interest and (2) and from Guzzardi, supra, the Act’s lack of loss carryover provisions. I do not view the inclusion of these examples as an undertaking by the Director to exhaustively list every instance where the Act differs from the federal tax code. Rather, the assumption is that the Act does not mirror the federal tax code. “LWjhen the Legislature intended to incorporate federal income tax concepts, it did so explicitly.” Smith, supra, 108 N.J. at 33, 527 A.2d 843. Quite frankly, should the Director attempt to list every federal tax preference that is not incorporated in the Act, the instructions for the NJ-1040 would be of the size and complexity of the federal tax code, and of little use to the ordinary taxpayer.
I conclude that the instructions to the 2008 NJ-1040 are plainly inferable from the language of the Act. Consequently, there is no requirement that the Director promulgate a regulation. Metromedia, supra, 97 N.J. at 329, 478 A.2d 742. The instructions direct the taxpayer to report on Schedule B of the NJ-1040 what has been reported for federal purposes on Schedule D of the *548 federal 1040. This direction is preceded by the instruction that, in calculating gain, the taxpayer may deduct the expenses of the sale and the federal basis. It is implicit in these instructions that the taxpayer may not carry over from Schedule D any federal tax preferences which have not been expressly provided for by the Act.
Finally, that plaintiffs accountant may have received an assurance from a Division employee that the reporting of plaintiffs gain for purposes of the Act should be identical to that reported on Schedule D of the federal return is of no import here. That assurance was received during the course of a telephone conversation, and we have no idea precisely how the question was framed or what information was given by the accountant to the employee. The Legislature has made it clear that only erroneous advice furnished to a taxpayer in writing will have any effect on a taxpayer’s liability, and that effect is a waiver of penalty and interest, and not of the tax actually due.[4] N.J.S.A. 54:49-ll(a).
For the foregoing reasons, the court concludes that the final determination of the Director, rejecting the plaintiffs exclusion of fifty percent of the gain on the sale of qualified small business stock, is correct and is, therefore, affirmed. The motion of the Director is granted and the cross-motion of plaintiff is denied.

 Plaintiff's certification stated that she sold 16,540 VR shares, while the tax returns appended to her certification indicated that she sold 16,970 shares. Plaintiff's counsel clarified that she had actually sold 16,970 shares, although she claimed the I.R.C. § 1202 exclusion that is at issue here only on the gain on the sale of 16,540 shares. The remaining 400 shares were apparently ineligible for the § 1202 exclusion.

 The certifications of both the plaintiff and her accountant state that the amended returns were filed on or before April 15, 2010. At oral argument, plaintiff's counsel indicated that the amended federal and New Jersey returns had actually been filed by April 15, 2009, and that he had made a typographical error in preparing the certifications. The error is not material to the issue before the court.

 Reporting the transaction as an installment sale had the effect of allocating some of the tax basis to the portion of the sales price being held in escrow for distribution to the plaintiff at some future date, and allocating less of the total basis to the payments made to the plaintiff during tax year 2008. This resulted in a larger net gain for tax year 2008 than had been reported on the original return. The Division's deficiency assessment was a consequence of this larger net gain.

 The Division's deficiency assessment made in connection with plaintiff’s amended 2008 return resulted from plaintiff's reporting of the sale as an installment sale, and not from the exclusion of the gain permitted under I.R.C. § 1202. Consequently, any interest or penalty that may have been a part of that deficiency was not a result of instructions that plaintiff's accountant was said to have relied upon.