*Decisions will be entered under Rule 50.*

ESTATE OF CLARENCE E. LEHR, DECEASED, MRS. SARAH JANE WIANT AND MRS. RENA E. GORDON, EXECUTRIXES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24389. Promulgated May 22, 1952.

*Edgar W. Pugh, Esq.*, for the petitioners.
*Robert E. Johnson, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* The petitioners assigned as error in their petition the action of respondent in treating the note in the unpaid amount of $105,000 as a capital asset and the "loss" sustained in the "discounting" thereof as a capital loss. They contend upon brief that the charge of $12,471.58 by the bank represents discount and is deductible as an ordinary and necessary business or nonbusiness expense under the provisions of section 23 (a) (1) and (2) of the Code, or, in the alternative, as a business or nonbusiness loss or as a bad debt.

Section 23 (g) (1) of the Code provides that: "Losses from sales or exchange of capital assets shall be allowed only to the extent provided in section 117."

Section 117 provides as follows to the extent material here:

(a) DEFINITIONS.—As used in this chapter—

    (1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but

does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *.

\* \* \* \* \* \* \*

(d) LIMITATION ON CAPITAL LOSSES.—

\* \* \* \* \* \* \*

(2) OTHER TAXPAYERS.—In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer or $1,000, whichever is smaller. * * *

Petitioners argue, without citation of authority, that Congress never contemplated that section 117 should be interpreted so as to deny because of a technicality an economic loss otherwise allowable. The well established rule is that deductions from gross income are subject to the will of Congress and may not be allowed without a showing by the taxpayer of clear legislative authority. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *White* v. *United States*, 305 U. S. 281; *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590. Congress has provided that where a capital asset, as defined in the statute, is sold or exchanged, the deduction for any loss is deductible only under section 117. The respondent having determined that section 117 applies to the transaction, petitioners had the burden of proving that the note was not a capital asset or that it was not sold or exchanged within the meaning of the statute.

The note was property held by the decedent. Petitioners, however, seek to show otherwise by contending that decedent never intended to make a capital investment; that the loan was made to Solomon and Karp to provide them with funds to purchase assets of the corporation in a liquidation proceeding; that the loan was the only satisfactory method of selling corporate assets to the borrowers; that the note could not be disposed of at a profit; that the reason for making the loan was to enable the decedent to get out of a business in which he was engaged; and that as the note was acquired to accomplish a business purpose, the note was held primarily for sale to customers in the ordinary course of decedent's trade or business within the meaning of *Hercules Motors Corporation*, 40 B. T. A. 999.

There is implied in the contentions of petitioners that the liquidation of the corporation was a business of the decedent. Without a contention or proof that the corporation was a sham, it must be regarded as an entity separate and distinct from the decedent for tax purposes even though he held a majority of its stock and had from time to time made advances to it. *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. Petitioners do not otherwise characterize the decedent's alleged business. None, in the conduct of which the note was acquired, is established by the evidence. In any event, section 117 is applicable

to all property held by the taxpayer regardless of whether or not connected with his trade or business.

Assuming that the note was held in connection with a trade or business and that the property was acquired in the ordinary course thereof and not to be held as an investment, to come within the exception claimed it would be necessary to establish that it was held primarily for sale to customers in the ordinary course of the trade or business. *Rockford Varnish Co.*, 9 T. C. 171; *W. T. Thrift, Sr.*, 15 T. C. 366. Here the note was held for 4 years, and no proof was made that it was ever offered for sale during that period.

In *Hercules Motors Corporation, supra,* the trade acceptances reached the taxpayer as a necessary incident to the sale of its products and it was necessary that the corporation dispose of them. The activities of the corporation in the sale of other acceptances were sufficient to meet the exception to the statute concerning sale to customers. In *Joe B. Fortson*, 47 B. T. A. 158, and *Harry Dunitz*, 7 T. C. 672, affd. 167 F. 2d 223, cases cited by petitioners, we reached a like conclusion from the evidence.

The record made by petitioners does not establish that the note was held primarily for sale to customers in the ordinary conduct of a trade or business. Accordingly, we hold that the note was property held by the decedent within the meaning of section 117. *Rockford Varnish Co., supra; Conrad N. Hilton*, 13 T. C. 623.

The gist of the contention of petitioners on the disposition of the note is that it was discounted by and not sold to the bank; hence there was no sale of the property.

The term "sale" in section 117 should be given its ordinary meaning. *Helvering* v. *Flaccus Oak Leather Co.,* 313 U. S. 247; *Hale* v. *Helvering*, 85 F. 2d 819; *John H. S. Lee*, 42 B. T. A. 920, affd. 119 F. 2d 946. In *Gruver* v. *Commissioner*, 142 F. 2d 363, the court said that:

* * * The legislative purpose is served if the term "sale" is not given a strict interpretation but is held to include kindred transactions of exchange, for in one case as in the other gains are earned in the ordinary course of business. * * *

* * * If no price is set for either property, it is said to be an exchange; but if each is valued and the difference is paid in money, it is a sale. * * *

In *Iowa* v. *McFarland*, 110 U. S. 471, the Court said that:

A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent. * * *

Definitions appearing in *Hale* v. *Helvering, supra,* and *Rogers* v. *Commissioner*, 103 F. 2d 790, cases involving questions like the one here, are to the same effect.

The term "discount" was defined in *Fleckner* v. *United States Bank*, 21 U. S. 338, as follows:

\* \* \* Nothing can be clearer, than that by the language of the commercial world, and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or drawback made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank. We must suppose that the legislature used the language in this its appropriate sense; and if we depart from this settled construction, there is none other which can be adopted, which would not defeat the great objects for which the charter was granted, and make it, as to the stockholders, a mere mockery. If, therefore, the discounting of a promissory note, according to the usage of banks, be a purchase, within the meaning of the 9th rule above stated (upon which serious doubts may well be entertained), it is a purchase by way of discount, \* \* \*

The definition was quoted with approval by the same Court in *National Bank* v. *Johnson*, 104 U. S. 271, with the following comment:

Discount, as we have seen, is the difference between the price and the amount of the debt, the evidence of which is transferred. That difference represents interest charged, being at some rate, according to which the price paid, if invested until the maturity of the debt, will just produce its amount. And the advance, therefore, upon every note discounted, without reference to its character as business or accommodation paper, is properly denominated a loan, for interest is predicable only of loans, being the price paid for the use of money.

Other definitions cited by the petitioners are to the same general effect.

Here there was no loan made by the bank to the decedent with a deduction from the amount thereof for interest paid in advance. The bank determined the consideration it paid to petitioner by deducting from the unpaid balance of $105,000 on the note, an amount computed as discount at the rate of 5 per cent, and entered the amount of $12,471.58 so computed in its books as unearned discount, and credited decedent's checking account with the net proceeds of $92,528.42. The bank's treatment of the amount in controversy on its books and returns as discount is not controlling, for book entries must give way to facts, *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, and the conclusion here depends upon the substance of the transaction, rather than form inconsistent therewith. *Conrad N. Hilton*, 13 T. C. 623, 630. That the bank, notwithstanding the contrary entries it made on its books, and the decedent considered that they were parties to a sale is indicated by the use of the word "purchased" in the endorsement which was typed by the bank on the agreement of June 30, 1942, and signed by the decedent, and other records of the bank. Other evidence of a sale and not a loan to petitioner by the bank involving a charge by the bank for discount is decedent's endorsement of the note, without recourse, which endorsement relieved him of liability on the obligation as an endorser. Thereafter the bank, as holder of the note, was required to look to the makers and collateral for payment of all of the unpaid principal and interest, they not having been relieved of any of their liability in the transaction between the bank and the decedent.

Prior to July 9, 1946, the note was in the possession of the bank with power to receive rentals payable by lessees for application of a specified portion thereof to the principal of the note and distribution of the remainder to the makers. Its service in that regard was that of a collection agent for all of the parties in interest. The acquisition of the note from the decedent was a transaction separate and distinct from that agency and one in which it acted for itself and in which the makers had no economic interest, for their liability, as we have pointed out, continued without change.

Other cases cited by petitioners are distinguishable. In *John H. S. Lee, supra*, the amount was paid on behalf of the maker of the note. In *John H. Watson, Jr.*, 27 B. T. A. 463, United States bonds were paid on maturity by the United States. In *Hale* v. *Helvering, supra*, there was a compromise with the maker of the notes. Here the transaction giving rise to this proceeding was between decedent and a third party, the bank. In *Sol Greisler*, 37 B. T. A. 542, affd. 102 F. 2d 787, there was a conveyance of worthless equities in real property in foreclosure proceedings and the circuit court said: "One cannot sell what has wholly disappeared." Decedent here had property of high value which he transferred in a transaction negotiated at arm's length.

We conclude that the note was a capital asset and was sold by the decedent to the bank, as determined by respondent. In view of the conclusion reached it is unnecessary to consider other contentions made by the petitioners. Accordingly,

*Decision will be entered for the respondent.*