PER CURIAM.
Plaintiff, Diana King, appeals from a summary judgment entered by the Tax Court, dismissing her complaint and affirming the issuance by the Director of the New Jersey Division of Taxation (Director or Division) of a notice of deficiency to plaintiff. Specifically, the court found that plaintiff impermissibly offset her gains from the sale of property with a nondeductible nonbusiness bad debt and, therefore, underpaid her 1996 state income taxes. We affirm.
The facts are undisputed. On April 4, 1991, plaintiff, in her individual capacity, entered into a $650,000 loan agreement with Imero Florentino Associates, Inc. (IFA). Plaintiff was the lender, IFA was the borrower, and IFA’s principal shareholder was a personal guarantor. Pursuant to the agreement, plaintiff agreed to make revolving credit loans to IFA until December 31, 1992, and IFA executed a revolving credit note in the principal amount of $650,000. As security, plaintiff received a lien on certain collateral belonging to IFA, which was subordinate to a prior security interest held by Chemical Bank. Plaintiff filed the necessary documents under the Uniform Commercial Code (UCC) to record her security interests.
In order to fund the loan to IFA, plaintiff took out her own loan from her broker, Goldman Sachs & Co. The IFA note provided for the payment of interest at one percent above the base periodic rate charged by Goldman Sachs. IFA was required to “duly and punctually pay” the principal and interest, and nonpayment of either, as well as bankruptcy, were deemed to be events of default, which would result in the balance becoming immediately due and payable. IFA and Mr. Fiorentino, as guarantor, accepted liability for plaintiff’s “out of pocket expenses” associated with enforcing the loan agreement. During the term of the 1991 revolving credit *629 loan, IFA repaid $200,000 of the principal and made the required periodic interest payments.
On December 29, 1992, with the agreement’s December 31 expiration date approaching, the parties negotiated a new Term Loan Note. The new note cancelled the previous agreement and had a face value of $450,000, accounting for IFA’s previous principal payment. Otherwise, it retained many of the previous provisions. For example, plaintiffs rights remained subordinated to Chemical Bank’s loans, interest continued to accrue at one percent above the rate charged by Goldman Sachs, plaintiff still could collect her “personal expenses” associated with enforcing the loan, and the note was subject to mandatory prepayment in the event of default. Pursuant to the terms of the note, IFA made $23,919 worth of periodic interest payments, which plaintiff reported on her 1994 federal and state income tax returns.
Apparently due to a default by IFA, the parties executed another agreement in August, 1995, labeled “Amended and Restated Term Loan Note.” Also in the amount of $450,000, the 1995 loan cancelled the 1992 agreement while retaining many of its features. It, however, was accompanied by a Security Agreement and a Forbearance and Repayment Agreement. Under the new arrangement, IFA acknowledged that it had been in default “since March of 1994” and agreed to repay the accrued interest of $51,385.87 in five monthly installments. Further, plaintiff was granted additional security, including 100,000 shares of stock in another entity, Ventura Entertainment Group, Inc. (Ventura).
On September 30, 1996, without having paid any more of the $450,000 principal due on the note, IFA filed for bankruptcy under Chapter 11. Plaintiff promptly filed a proof of claim in the amount of $568,857.35, asserting that she had a secured claim on “all assets” and that IFA was “indebted” to her for $450,000 principal, $106,090.65 interest, and $12,766.70 arrears.
Sometime thereafter, IFA entered an agreement to sell all of its assets to a third-party, Caribiner, Inc. (Caribiner), and to apply the proceeds of the sale towards its debt. In fact, IFA had been negotiating with Caribiner even before it filed for bankruptcy. *630 During the course of these negotiations, plaintiff repeatedly referred to IFA’s “indebtedness” to her and described herself as a junior secured creditor. Staking her “position regarding the repayment of her loans to [IFA,]” she objected to the proceeds of a sale being directed towards any creditors, other than Chemical Bank, before her.
Eventually, a sale amenable to all was negotiated, and, on November 7, 1996, plaintiff consented to IFA’s motion for approval of the bankruptcy sale on the condition that she be paid $120,000 out of the proceeds “in satisfaction of her claims against” IFA. Two weeks later, at IFA’s direction, plaintiff received a bank credit of $120,000. She then filed the relevant UCC documents required to terminate her security interest and surrender the remaining debt with respect to the IFA loan.
Plaintiffs subsequent tax treatment of this transaction under the New Jersey Gross Income Tax Act (Act), N.J.S.A. 54A:1-1 to 10-12, specifically N.J.SA. 54A:5-l(e), is the subject of this appeal. As a result of the $330,000 left unpaid by IFA and the $32,973 of attorney’s fees she had incurred attempting to collect the debt, plaintiff reported a short-term capital loss of $362,973 on her initial 1996 federal income tax return, which she characterized as a “nonbusiness bad debt deduction.” Likewise, on her 1996 New Jersey Gross Income Tax return, plaintiff again described the loss as a “nonbusiness bad debt deduction” and used it to offset her other gains from the disposition of property. Sometime thereafter, however, she filed amended returns, in which she attempted to “adjust the prior erroneous classification of a non-business bad debt deduction claimed on the original return to an investment loss on the disposition of a security.”
After auditing plaintiffs 1996 state return, the Director determined that plaintiff had wrongfully deducted the $362,973, because the loss was not the result of a faulty investment, but rather amounted to a non-business bad debt, which is not deductible in “determining Net Gains for New Jersey Gross Income Tax purposes.” Plaintiff filed a timely protest, claiming the note was a capital asset that she sold, and did not abandon, for $120,000. The *631 Director issued a final determination in which he again found that “[plaintiff] made a personal loan that resulted in a non-business bad debt[ ]” for which the “New Jersey Gross Income Tax law does not provide a deduction[.]” Accordingly, the Director upheld the deficiency notice.
Thereafter, plaintiff filed a complaint in the Tax Court, and, after the Director answered, the matter proceeded to summary judgment. In an oral opinion, the court affirmed the deficiency notice and dismissed plaintiffs complaint. The judge reasoned:
I find the plaintiff did not sell or exchange or dispose of an investment or security ... Plaintiff ... consented to the proposed sale of the debtor’s assets, that is IFA’s assets, on the condition that she be paid $120,000 in settlement and released for claims against the debtor. She did not sell or transfer the note evidencing the debt or any other security. No evidence has been presented that the plaintiff exchanged the note for anything. She just simply gave up her right to sue on the note. She didn’t sell it.
Even if I were inclined to construe the facts differently, Walsh v. Director, 15 N.J.Tax 180 (App.Div.1995) is directly on point____ In Walsh the taxpayer ... directly loaned money to Tactell. Tactell later transferred its assets to another corporation, Fidelco, which assumed Tactell’s liabilities, including the liability for plaintiffs advances to Tactell. Thereafter, Fidelco ceased operations and sold off its assets to pay its creditors, similar to the action by IFA here ... Fidelco also defaulted on the money that plaintiff had advanced directly to Tactell. Plaintiff attempted to claim those losses as dispositions of an investment — I guess dispositions of property under [N.J.S.A] 54A:5-1.c.
The Appellate Division in that case specifically rejected the argument that the phrase “sale, exchange, or other disposition” contained in NJ.S.A. 54A:5-1.c must be interpreted with reference to federal law. In so doing, it referred to the decision of the Tax Court below and the reliance of the Tax Court on Vinnik v. Director, 12 N.J.Tax 450 (1992) and on the principle recognized by our Supreme Court in Smith v. Director, 108 N.J. 19, 527 A.2d 843 (1987) that the legislature rejected the federal model in drafting the Gross Income Tax Act.
... [T]he legislature wished to limit deductions as a way of avoiding the tax sheltei-s and loopholes found in federal law and [ ] the GIT Act establishes a tax on New Jersey Gross Income reduced only by deductions, exemptions, and credits expressly recognized by the legislature.
I think [ 1 Walsh and Vinnik are clearly still good law. The loss suffered by plaintiff is not derived from the sale, exchange, or other disposition of property within the meaning and intent of the Gross Income Tax Act, and for the foregoing reasons I’m granting defendant’s motion for summary judgment.
In this appeal, plaintiff raises the same issue for our consideration, namely, that she suffered a deductible loss on the “sale, exchange or other disposition” of property under N.J.S.A. 54A:5-1(c) because her loan to IFA was an investment that produced a *632 capital asset, in the form of a note, which she then sold at a loss during the bankruptcy proceedings. We disagree and affirm substantially for the reasons stated in Judge Menyuk’s well-reasoned oral opinion of April 16, 2004. We add only the following comments.
Without a doubt, notes and accounts receivable resulting from a nonbusiness loan are capital assets under federal tax law. Estate of Clarence E. Lehr v. Comm’r of Internal Revenue, 18 T.C. 373, 377, 1952 WL 138 (1952); Ardela Inc. v. Comm’r of Internal Revenue, 28 T.C.M. (CCH) 470 (1969). As such, the sale or exchange of a note triggers federal capital gain or loss treatment. See I.R.C. § 1222. Moreover, pursuant to I.R.C. § 166(d)(1)(B), “where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.” In other words, federal law automatically assumes that a taxable “disposition” has occurred when a nonbusiness debt becomes worthless, and this event implicates capital gain or loss treatment.
Significantly, New Jersey consciously refused to pattern its gross income tax on the federal code. Vinnik v. Dir., Div. of Taxation, 12 N.J.Tax 450, 453 (1992). As explained by the Supreme Court in Smith v. Director, Div. of Taxation, 108 N.J. 19, 32, 527 A.2d 843 (1987):
Even a cursory comparison of the New Jersey Gross Income Tax and the Internal Revenue Code indicate that they are fundamentally disparate statutes. The federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid the loopholes available under the Code.
Accordingly, with the exception of certain business-related expenses of proprietorships and partnerships, the State does not allow tax deductions unless they are specifically authorized by statute. Vinnik, supra, 12 N.J.Tax at 454. No such authorization exists for the deduction of worthless nonbusiness debts. Ibid.
In fact, we have specifically rejected the argument that “the abandonment of debt when it becomes worthless is a disposition of property under N.J.S.A. 54A:5-1c.” Walsh v. Dir., Div. of Taxation, 15 N.J.Tax 180, 183-86 (App.Div.1995). As explained by *633 Judge Menyuk below, Walsh involved a creditor who lent money to a corporation, which, in turn, transferred its assets and liabilities to a second corporation. Id. at 181. Subsequently, the second corporation was forced to cease operations and sell its assets in order to pay its creditors. Id. at 182. When the proceeds from the sale were not sufficient to cover the debt owed to the plaintiffs, they attempted to deduct the loss from their gains on the disposition of other property. Id. at 184. We rejected their claim that “writing-off a debt is a form of parting with, alienation of, or giving up property” and concluded, instead, that “[a] sale or exchange is not the same as an abandonment of property.”[1] Id. at 185-186.
Here, plaintiff seeks to reconcile her claim with our decision in Walsh by contending that she actually exchanged the note she held against IFA for $120,000 out of the proceeds of the bankruptcy sale, and, therefore, she did not just abandon the debt. Plaintiffs argument, however, contradicts her own treatment of the debt and her initial characterization of the resolution in the bankruptcy proceedings. From the moment IFA began to have difficulty repaying the loan, plaintiff focused her efforts on collecting and securing the debt for herself, not on transferring the note. She restructured the loan several times, accepted additional collateral, hired legal counsel for the purpose of asserting her position as a “secured creditor,” and ultimately filed UCC documents that terminated or, in plaintiffs counsel’s own words, “surrendered” the debt.
Significantly, plaintiff herself characterized the note as a bad debt, not an alienable interest, on both of her original tax returns, suggesting that she never intended or understood her actions to be a “sale, exchange or other disposition.” Unlike the cases she *634 relies upon, in which a creditor “negotiated at arm’s length” and eventually sold a note with “high value” to an independent third party that then assumed the creditor’s position, see Lehr, supra, 18 T.C. at 381; Ardela, supra, 28 T.C.M. (CCH) at 470, plaintiff never engaged a third party nor sought to preserve the remaining value of the note. No alternative creditors were available, and the note simply ceased to exist once she accepted the $120,000. Although plaintiff was able to recover some of the balance due on the loan, the mere fact that the note was not entirely worthless does not change the fact that there was no way for her to recover the remaining $330,000, nor does it transform her self-acknowledged “surrender” of the debt into a fundamentally different type of transaction. Accordingly, we conclude, as did the Tax Court, that “the loss suffered by plaintiff is not derived from the sale, exchange, or other disposition of property within the meaning and intent of the Gross Income Tax Act.”
Affirmed.

 New Jersey's divergence from federal treatment of nonbusiness bad debts also makes sense in light of the fact that, unlike federal tax law, New Jersey does not generally recognize discharge of indebtedness as income. Weintraub v. Dir., Div. of Taxation, 19 N.J.Tax 65 (2000); see also I.R.C. § 61(a)(12). In other words, whereas federal law effectively offsets the deductions taken by creditors for bad debts by taxing the gains created on behalf of debtors as a result of a discharge, New Jersey does neither.