71 A.3d 878

HARLAN W. WAKSAL AND CAROL WAKSAL, PLAINTIFFS–
APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

Argued March 11, 2013—Decided August 13, 2013.

226

R. James Kravitz argued the cause for appellants (*Fox Rothschild,* attorneys; *Jonathan D. Weiner* and *Steven C. Levitt,* of counsel; *Mr. Weiner, Mr. Levitt, Wendy Wolff Herbert,* and *Abbey True Harris,* on the briefs).

*Lewis A. Scheindlin,* Assistant Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney; *Ramanjit K. Chawla,* Deputy Attorney General, on the letter briefs).

Justice PATTERSON delivered the opinion of the Court.

In this tax appeal, the Court considers the deductibility of a worthless nonbusiness debt under a provision of the New Jersey Gross Income Tax Act, *N.J.S.A.* 54A:1–1 to 10–12 (the Act). This

case arose from a dispute about such a deduction in the 2004 New Jersey income tax return filed by plaintiffs Harlan W. Waksal and Carol Waksal (the Waksals). In their New Jersey income tax return, as in their federal income tax return for the same year, the Waksals reported a $14,769,320 loss due to a worthless nonbusiness debt arising from Harlan Waksal's loan in that amount to his brother who failed to repay it.

The deduction claimed by the Waksals in their federal tax return was supported by 26 *U.S.C.A.* § 166(d)(1)(B), a provision of the Internal Revenue Code pursuant to which losses from worthless nonbusiness debts are treated as short-term capital losses. That provision, however, has no direct counterpart in New Jersey tax law. In the absence of a provision in the Act expressly authorizing the deduction they sought, the Waksals invoked *N.J.S.A.* 54A:5–1c (section 5–1c). Section 5–1c taxes "[n]et gains or net income, less net losses, derived from the sale, exchange or other disposition of property . . . as determined in accordance with the method of accounting allowed for federal income tax purposes." *N.J.S.A.* 54A:5–1c. Relying upon *Koch v. Director, Division of Taxation*, 157 *N.J.* 1, 722 *A.*2d 918 (1999), the Waksals claimed that section 5–1c's statutory language incorporates 26 *U.S.C.A.* § 166(d)(1)(B) as a "method of accounting" recognized in federal tax law. The Tax Court rejected the Waksals' position, granting summary judgment in favor of the Director of the Division of Taxation (Director). The Appellate Division affirmed.

We affirm. Based upon the plain language of *N.J.S.A.* 54A:5–1c, the worthless nonbusiness debt at issue does not constitute a "sale, exchange or other disposition of property" within the meaning of that provision. Moreover, given the Legislature's restrictive approach to personal income tax deductions, as well as the statutory text, we hold that section 5–1c does not integrate into the Act every provision of the Internal Revenue Code governing capital gains and losses. Even if section 5–1c were to govern this case, 26 *U.S.C.A.* § 166(d)(1)(B) would not constitute a federal "method of accounting" for purposes of this case.

Accordingly, we conclude that plaintiffs cannot offset their capital gains derived from the "sale, exchange or other disposition of property" with their worthless nonbusiness debt pursuant to *N.J.S.A.* 54A:5–1c, and that the Tax Court and Appellate Division properly rejected their claim.

## I.

The Court reviews a record of undisputed facts. The worthless nonbusiness debt at issue in this case was plaintiff Harlan Waksal's January 15, 2002 loan in the amount of $14,769,320 to his brother, Samuel Waksal. The promissory note executed by Samuel Waksal provided that he would make quarterly payments on the loan, pay four percent interest per annum and repay the loan by January 31, 2004. Samuel Waksal made no payments on the loan. In early 2005, Harlan Waksal learned that his brother had numerous financial problems and that no payments would be made on the loan. As the Tax Court found, Harlan Waksal's loan to his brother was worthless.

In 2005, Harlan Waksal and Carol Waksal jointly filed their federal and New Jersey tax returns for tax year 2004. On their 2004 federal income tax return, the Waksals reported a $14,769,320 short-term capital loss from the loan to Samuel Waksal, which, for purposes of the Internal Revenue Code provision, 26 *U.S.C.A.* § 166(d)(1)(B), is treated as a worthless nonbusiness debt. On their New Jersey gross income tax return, the Waksals similarly reported a $14,769,320 loss from "the sale, exchange or other disposition of property" pursuant to *N.J.S.A.* 54A:5–1c, and used that loss to offset capital gains realized from the disposition of other property in 2004. By virtue of the loss reported on their New Jersey return, plaintiffs reported a net gain in the amount of $6,644,022 during 2004.

On September 15, 2008, following an audit, the Director issued a notice of deficiency to the Waksals. The Division of Taxation disallowed the $14,769,320 loss to offset gains on the Waksals' 2004 New Jersey return. The Director advised the Waksals that there

was an outstanding balance on their 2004 New Jersey income tax obligation of $1,324,808 and, with interest and a late penalty included, the Waksals owed $2,001,602 in New Jersey income tax for tax year 2004. The Waksals did not file a protest with the Division within ninety days of the notice of deficiency, and accordingly the notice became a fixed and final assessment on December 14, 2009. *N.J.S.A.* 54A:9–2(b); *see also Gifford v. Dir., Div. of Taxation,* 15 *N.J.Tax* 51, 57 (Tax 1995); *Peoples Express Co. v. Dir., Div. of Taxation,* 10 *N.J.Tax* 417, 423 (Tax 1989).

The Waksals instituted this action by filing a complaint in Tax Court on March 4, 2009. They challenged the Director's notice of deficiency and assessment on the ground that section 5–1c authorized their claimed deduction of a worthless nonbusiness debt in the amount of $14,769,320 by incorporating the Internal Revenue Code's treatment of such debts into New Jersey's tax law.

The Waksals and the Director cross-moved for summary judgment under *Rules* 4:46–1 and 4:46–2. Basing its factual findings upon the undisputed record, the Tax Court granted summary judgment in favor of the Director. The Tax Court rejected the Waksals' contention that the federal deduction for worthless nonbusiness debts was incorporated into New Jersey's tax law by virtue of section 5–1c. It held that section 5–1c governs only if a taxpayer has sold, exchanged or disposed of property, and that section 5–1c's applicability may depend on the circumstances of the underlying transaction. The Tax Court dismissed the Waksals' complaint.

The Waksals appealed. According to the Waksals, prior to the Appellate Division's consideration of their appeal, the Waksals learned that, in an unrelated matter, the Director had construed section 5–1c to incorporate 26 *U.S.C.A.* § 165(g)(1), a federal provision creating a deduction for worthless securities. The Waksals sought a remand to the Tax Court for reconsideration of its grant of summary judgment in light of that new evidence. The Appellate Division denied the motion. Thereafter, the Waksals moved before the panel for reconsideration of that decision or, in

the alternative, for leave to supplement the record. The panel also denied that motion.

On October 31, 2011, the Appellate Division affirmed substantially for the reasons cited by the Tax Court and added a brief discussion of the case law presented by the Waksals.

We granted the Waksals' petition for certification. 210 *N.J.* 28, 40 *A.*3d 58 (2012).

## II.

The Waksals construe the word "disposition" in section 5–1c to include the loss of a worthless nonbusiness debt and argue that this provision therefore governs this case. They contend that the federal deduction for worthless nonbusiness debts, 26 *U.S.C.A.* § 166(d)(1)(B), is a federal "method of accounting" within the meaning of *N.J.S.A.* 54A:5–1c. The Waksals rely on *Koch, supra,* 157 *N.J.* at 1–11, 722 *A.*2d 918 for the proposition that section 5–1c incorporates all of the rules used in federal tax law to determine the amount and timing of a taxpayer's income, gains, losses and deductions. They assert that the Director's position in this case is inconsistent with the position that the Director has taken in another matter: that a loss derived from worthless securities constitutes a "disposition" under section 5–1c. The Waksals urge the Court to find that the Tax Court and the Appellate Division misconstrued *Koch,* and that the courts improperly relied upon other New Jersey state court decisions addressing worthless nonbusiness debts.

The Director counters that worthless nonbusiness debts are not a "sale, exchange or other disposition of property" under section 5–1c. Citing fundamental distinctions between federal and state approaches to personal income tax deductions, the Director contends that only deductions specifically identified by statute are permitted by New Jersey tax law. The Director contends that *Koch* was limited to its setting—the calculation of the gain achieved by the *Koch* taxpayer from the sale of his partnership

interest—and that the Waksals' argument about the Director's position on worthless securities is irrelevant.

## III.

Our courts "generally defer to the interpretation that an agency gives to a statute that agency is charged with enforcing." *Koch, supra,* 157 *N.J.* at 8, 722 *A.*2d 918 (citing *Smith v. Dir., Div. of Taxation,* 108 *N.J.* 19, 25, 527 *A.*2d 843 (1987)). The Director's "interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." *Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984) (citing *N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562–63, 384 *A.*2d 795 (1978); *Atl. City Transp. Co. v. Dir., Div. of Taxation,* 12 *N.J.* 130, 139, 95 *A.*2d 895 (1953)). This Court recognizes "the Director's expertise, particularly in specialized and complex areas of the Act." *Koch, supra,* 157 *N.J.* at 8, 722 *A.*2d 918 (citing *Metromedia, supra,* 97 *N.J.* at 327, 478 *A.*2d 742). That deference, however, "is 'not total, as the courts remain the "final authorities" on issues of statutory construction.'" *Ibid.* (quoting *N.J. Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 575, 384 *A.*2d 795).

We recognize the expertise and discretion of the Tax Court in this specialized litigation. *Dover–Chester Assocs. v. Randolph Twp.,* 419 *N.J.Super.* 184, 195, 16 *A.*3d 467 (App.Div.), *certif. denied,* 208 *N.J.* 338, 27 *A.*3d 951 (2011); *Reck v. Dir., Div. of Taxation,* 345 *N.J.Super.* 443, 446, 785 *A.*2d 476 (App.Div.2001), *aff'd o.b.,* 175 *N.J.* 54, 55, 811 *A.*2d 458 (2002). While "factual findings of a Tax Court judge are entitled to deference because of that court's expertise in the field, the judge's interpretation of a statute is not entitled to such deference and is subject to our de novo review." *Advance Hous., Inc. v. Twp. of Teaneck,* 422 *N.J.Super.* 317, 327, 28 *A.*3d 841 (App.Div.2011) (citing *Dover–Chester Assocs., supra,* 419 *N.J.Super.* at 195, 16 *A.*3d 467), *certif. granted,* 209 *N.J.* 100–01, 35 *A.*3d 683 (2012). Because we review the Tax Court's grant of summary judgment in the Director's

favor, we conduct a de novo review. *See Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 539–40, 666 *A.2d* 146 (1995); Pressler & Verniero, *Current N.J. Court Rules*, comment 3.2.1 on *R.* 2:10–2 (2013).

 We begin our review with the statute's plain language, which is the best indicator of the Legislature's intent. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.2d* 1039 (2005); *accord Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 109–10, 853 *A.2d* 940 (2004); *Koch, supra*, 157 *N.J.* at 7, 722 *A.2d* 918. We are "guided by the legislative objectives sought to be achieved by enacting the statute." *Wilson ex rel. Manzano v. City of Jersey City*, 209 *N.J.* 558, 572, 39 *A.3d* 177 (2012) (citing *LaFage v. Jani*, 166 *N.J.* 412, 431, 766 *A.2d* 1066 (2001)). The rules of statutory construction must be applied to " 'effectuat[e] the legislative plan as it may be gathered from the enactment read in full light of its history, purpose and context.' " *Koch, supra*, 157 *N.J.* at 7, 722 *A.2d* 918 (quoting *State v. Haliski*, 140 *N.J.* 1, 9, 656 *A.2d* 1246 (1995)).

This case turns upon the contrast between federal and state treatment of losses incurred by a taxpayer by virtue of a worthless nonbusiness loan. Federal tax law treats Harlan Waksal's loan to his brother, indisputably a worthless loan, as a loss for purposes of determining the Waksals' tax liability. *See* 26 *U.S.C.A.* § 166(d)(1)(B). Under the Internal Revenue Code, in order for a taxpayer to incur a capital gain or loss, that gain or loss must result from "the sale or exchange of a capital asset." 26 *U.S.C.A.* § 1222(1)-(4).[1] The Internal Revenue Code's treatment of the Waksals' worthless nonbusiness loan is thus contingent upon whether that loan constitutes a "capital asset." That loan constitutes a "nonbusiness debt" under 26 *U.S.C.A.* § 166(d)(2), which defines "nonbusiness debt" to mean "a debt other than—(A) a debt created or acquired … in connection with a trade or

---

[1] Under the Internal Revenue Code, a "capital asset" includes "property held by the taxpayer," subject to several exclusions that are not relevant here. 26 *U.S.C.A.* § 1221(a).

business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Because the loan at issue here meets that definition, and because that loan has become worthless, the Waksals are deemed to have suffered a "loss from the sale or exchange . . . of a capital asset" under 26 *U.S.C.A.* § 166(d)(1)(B). That provision, applied to taxpayers other than corporations, states that "where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year." 26 *U.S.C.A.* § 166(d)(1)(B). That provision, pursuant to 26 *U.S.C.A.* § 166(d)(1)(a), is subject to the caveat that the loan has lost its entire value, not merely a portion of its value. *See Buchanan v. United States*, 87 *F.*3d 197, 198–99 (7th Cir.) (noting that "[t]he criterion of worthlessness is interpreted strictly: the deduction is unavailable if even a modest fraction of the debt can be recovered"), *cert. denied*, 519 *U.S.* 950, 117 *S.Ct.* 363, 136 *L.Ed.*2d 254 (1996); *accord United States v. Chavin*, 316 *F.*3d 666, 680 (7th Cir.2002). As stipulated by the parties in this case, the Waksals' loan has no value. Accordingly, under the Internal Revenue Code, the Waksals' loss due to Harlan Waksal's worthless nonbusiness loan to his brother is treated as a short-term capital loss. *See* 26 *U.S.C.A.* § 166(d)(2); 26 *U.S.C.A.* § 1222(2). Under federal law, the Waksals were entitled to report the loan as a loss on their 2004 federal income tax return.

If New Jersey's Act mirrored the Internal Revenue Code's treatment of deductions for capital losses, the Waksals would be entitled to the deduction that they claimed on their 2004 New Jersey income tax return. Our Legislature, however, set a different course for New Jersey when it enacted the state income tax in 1976. *See Smith, supra,* 108 *N.J.* at 30–31, 33, 527 *A.*2d 843. The Senate Committee that released the state income tax bill described it as "a tax on gross income, shorn of the deductions and items of tax preference in the Federal Income Tax." S. Revenue, Fin. & Appropriations Comm. *Statement to Assemb. Comm. Sub-*

*stitute for Assemb. No. 1513,* 197th Leg. (May 13, 1976). As this Court has noted:

> The Act's legislative history clearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes available under the federal tax laws. . . . Since the Legislature rejected the federal model of tax income, other branches of government may not superimpose the [Internal Revenue] Code upon the Gross Income Tax Act in the guise of statutory construction.
>
> [*Smith, supra,* 108 *N.J.* at 33, 527 *A.*2d 843 (citation omitted).]

 In contrast to the Internal Revenue Code, the New Jersey Tax Act "is a tax on gross income reduced only by certain limited deductions and credits." *Vinnik v. Dir., Div. of Taxation,* 12 *N.J.Tax* 450, 453 (Tax 1992) (citing *Sorensen v. Dir., Div. of Taxation,* 184 *N.J.Super.* 393, 2 *N.J.Tax* 470, 476, 446 *A.*2d 213 (Tax 1981)). The Act recognizes certain statutory deductions. *See, e.g., N.J.S.A.* 54A:3–1 (allowing personal $1,000 exemption, among others, to be deducted from taxpayer's gross income); *N.J.S.A.* 54A:3–2 (allowing deduction for certain alimony and maintenance payments); *N.J.S.A.* 54A:3–3 (allowing deduction for medical expenses paid during taxable year exceeding two percent of gross income); *N.J.S.A.* 54A:3–6 (allowing deduction for "qualified conservation contribution, as defined under" 26 *U.S.C.A.* § 170); *N.J.S.A.* 54A:3A–17 (allowing certain deductions for property taxes). There is, however, no corresponding provision in the Act expressly authorizing a deduction for worthless nonbusiness debts. *King v. Dir., Div. of Taxation,* 22 *N.J.Tax* 627, 632 (App.Div.2005); *Vinnik, supra,* 12 *N.J.Tax* at 454.

In the absence of a statutory deduction for worthless nonbusiness loans, the Waksals contend that 26 *U.S.C.A.* § 166(d)(1)(B) is incorporated into New Jersey tax law by virtue of the reference to federal accounting principles in section 5–1c. That provision describes one of sixteen categories of gross income identified in *N.J.S.A.* 54A:5–1.[2] Section 5–1c, entitled "[n]et gains or income from disposition of property," provides in relevant part:

---

[2] In identifying sixteen categories of gross income, New Jersey's Act diverges from the approach of the Internal Revenue Code, which defines gross income as "all income from whatever source derived." 26 *U.S.C.A.* § 61.

Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes, except as expressly provided for under this act[.] . .

. . . .

. . . The term "net gains or net income" shall not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes.

[*N.J.S.A.* 54A:5-1c.]

In light of the Legislature's objective when it drafted the Act, we address two issues raised by the language of section 5-1c. First, we determine whether the worthless nonbusiness loan disputed here was "derived from the sale, exchange or other disposition of property" within the meaning of section 5-1c. Second, we consider the extent to which the statutory reference to "the method of accounting allowed for federal income tax purposes" effectively incorporates into our law 26 *U.S.C.A.* § 166(d)(1)(B)'s approach to worthless nonbusiness debt losses.

## IV.

The first inquiry—whether the Waksals' loss due to Harlan Waksal's loan to his brother was derived from the sale, exchange or other disposition of real or personal property within the meaning of section 5-1c—is narrowed by the parties. The Waksals do not contend that the loan involved either a "sale" or an "exchange" of real or personal property under the statutory terms, but argue that the loss was derived from a "disposition" of real or personal property. *N.J.S.A.* 54A:5-1c.

We agree with the Tax Court and the Appellate Division that the Waksals' declaration of the nonbusiness loan as worthless was not a "disposition of property" within the meaning of section 5-1c. We find persuasive the reasoning in three decisions that addressed this precise issue. In *Vinnik, supra,* the Tax Court rejected the taxpayer's argument that when a nonbusiness debt becomes worthless, a "disposition of property" has occurred for

purposes of section 5–1c. 12 *N.J.Tax* at 452–55. Noting the Legislature's intention to differentiate New Jersey's income tax scheme from the federal model and to constrain deductions, the Tax Court held that "a worthless nonbusiness debt . . . does not fit the statutory rubric of 'sale, exchange or other disposition of property' found in *N.J.S.A.* 54A:5–1(c)." *Id.* at 454.

Affirming a Tax Court decision denying a taxpayer's claimed deduction, the Appellate Division in *Walsh v. Director, Division of Taxation*, 15 *N.J.Tax.* 180, 183, 186 (App.Div.1995), rejected the taxpayer's argument that a worthless nonbusiness debt was analogous to either an "involuntary conversion" of property or an abandonment of property, and that the worthless debt therefore gave rise to a "disposition." There, the taxpayer was a shareholder who had guaranteed the payment of bank loans to a corporation. *Id.* at 181. The borrower transferred that money with other assets to a second corporation, which was unable to repay the loan. *Id.* at 181–82. The Appellate Division affirmed the Tax Court's determination that a "disposition" had not taken place, citing the lack of any transaction with a third party when a worthless debt is deemed uncollectable. *Id.* at 183, 186. Noting that "the Legislature did not intend for *N.J.S.A.* 54A:5–1c to be read broadly to include a deduction for nonbusiness bad debts," the panel declined to defer to federal construction of the Internal Revenue Code in this regard. *Id.* at 185–86.

Another Appellate Division panel reached a similar conclusion regarding the deduction of worthless nonbusiness debt in *King, supra*, 22 *N.J.Tax* at 632. There, the taxpayer loaned $650,000 to a company in a 1991 transaction that was renegotiated in 1992, and again in 1995 as a secured $450,000 loan. *Id.* at 628–29. The company defaulted, filed for bankruptcy under Chapter 11, and entered into an agreement to sell its assets to another company. *Id.* at 629. The taxpayer settled her claim in the bankruptcy proceeding, receiving a bank credit of $120,000, terminating her security interest, and surrendering the remaining debt owed by the bankrupt borrower. *Id.* at 629–30. The Tax Court rejected

the taxpayer's contention that, because the taxpayer had obtained and then sold at a loss a note reflecting the debt, there was a "disposition" of property within the meaning of section 5–1c. *Id.* at 630–31. The Appellate Division affirmed, ruling that the note did not "transform [the taxpayer's] self-acknowledged 'surrender' of the debt into a fundamentally different type of transaction." *Id.* at 634. The panel concurred with the Tax Court that the plaintiff's loss was " 'not derived from the sale, exchange, or other disposition of property within the meaning and intent of the Gross Income Tax Act.' " *Ibid.*

The same principles govern this case. Applying the plain language of the statute, the taxpayer's inability to collect on his loan to his brother does not give rise to a "disposition" of real or personal property for purposes of section 5–1c. The loan at issue was memorialized in a promissory note, which remained with the lender at all relevant times. We do not accept the Waksals' contention that because the note became worthless, it was effectively abandoned, and a "disposition" took place. *See id.* at 632–33 (noting that Tax Court "specifically rejected the argument that 'the abandonment of debt when it becomes worthless is a disposition of property under *N.J.S.A.* 54A:5–1c' " (quoting *Walsh, supra,* 15 *N.J.Tax* at 183–86)). The record reveals no change in the legal status of Harlan Waksal's loan to his brother, other than the Waksals' reporting of a short-term capital loss due to the worthless nonbusiness debt on their 2004 federal tax return, as permitted by 26 *U.S.C.A.* § 166(d)(1)(B), and their reporting of the disputed deduction for the debt on their 2004 New Jersey tax return. There was, in short, no "disposition" of this asset within the meaning of section 5–1c.[3] Accordingly, that provision does not govern this case.

---

[3] The Waksals contend that the Director takes inconsistent positions with respect to the application of section 5–1c, construing it not to incorporate the federal deduction for worthless nonbusiness debt in this and other cases, but deeming a loss of worthless securities to constitute a "disposition" under section 5–1c, and importing from federal law the Internal Revenue Code's deduction for

## V.

■ The absence of a "sale, exchange or other disposition" distinguishes this case from *Koch*. There, the taxpayer plaintiff had purchased an interest in a partnership that subsequently reported losses, prompting the taxpayer to reduce his federal income tax basis for his partnership interest to zero, and reducing his partnership capital account to a negative figure. *Koch, supra,* 157 *N.J.* at 3–4, 722 *A.*2d 918. Neither the Appellate Division nor the Tax Court questioned that the taxpayer's sale of his partnership interest constituted a "sale, exchange or other disposition of property" governed by section 5–1c. Instead, the parties disputed the scope of the term "federal methods of accounting" in section 5–1c, and the application of that concept to the calculation of the taxpayer's basis in the partnership interest that he sold. *Id.* at 5–6, 9–11, 722 *A.*2d 918. In that setting, the Court commented:

> Courts have interpreted section 5–1c expansively and have recognized that section 5–1c "is not limited to the recognized overall methods of accounting, such as the cash method or accrual method, but rather was intended to include any method or system as used for federal tax purposes by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized."
>
> [*Id.* at 10, 722 *A.*2d 918 (quoting *Baldwin v. Dir., Div. of Taxation,* 10 *N.J.Tax* 273, 284 (Tax 1988), *aff'd,* 237 *N.J.Super.* 327, 567 *A.*2d 1021 (App.Div.1990) (quotations omitted)).]

The Court held in *Koch* that three federal tax concepts relevant to the issue presented in that case were endorsed by section 5–1c: (1) the federal method of accounting; (2) the use of the federal adjusted basis; and (3) the exclusion of gains to the extent required by federal nonrecognition rules. *Id.* at 6–7, 722 *A.*2d 918. It held that the subtraction of the taxpayer's cost basis for his partnership interest from the sale price of that interest constituted

---

worthless securities, 26 *U.S.C.A.* § 165(g)(1). The Appellate Division denied the Waksals' motion to supplement the record with respect to the Director's position regarding worthless securities. Thus, the record does not include the Director's position on this issue, and no question relating to worthless securities is raised by this case. Accordingly, we do not reach that issue.

a "method of accounting" incorporated by section 5–1c. *Id.* at 11, 722 *A.*2d 918.

The Waksals rely on *Koch* in support of their position on the second issue presented by this appeal: whether 26 *U.S.C.A.* § 166(d)(1)(B) constitutes a federal "method of accounting" that is imported by section 5–1c into New Jersey tax law to create a deduction involving worthless nonbusiness debts. Although we hold that section 5–1c is not implicated by this case because there was no "sale, exchange or other disposition of property," we nonetheless address the federal "method of accounting" issue.

We decline to adopt the Waksals' expansive reading of *Koch.* The Court in *Koch* was not concerned with the applicability in New Jersey of a deduction recognized by the Internal Revenue Code, but with the potential conflict among three competing federal tax concepts that are explicitly mentioned in section 5–1c: the use of federal accounting methods; the use of the federal adjusted basis; and the use of federal nonrecognition principles. *Koch, supra,* 157 *N.J.* at 6–8, 722 *A.*2d 918. The Court's language about prior interpretations of the concept of federal accounting principles in section 5–1c referred to two prior decisions of the Tax Court: *Baldwin, supra,* 10 *N.J.Tax* at 284, and *Estate of Guzzardi v. Director, Division of Taxation,* 15 *N.J.Tax* 395, 404 (Tax 1995), *aff'd o.b.,* 16 *N.J.Tax* 374 (App.Div.1996). *See Koch, supra,* 157 *N.J.* at 10–11, 722 *A.*2d 918. Neither *Baldwin, supra,* which addressed a provision of the Internal Revenue Code prohibiting deductions on losses from dispositions of personal property, 10 *N.J.Tax* at 283, nor *Guzzardi, supra,* which concerned federal installment sale reporting rules, 15 *N.J.Tax* at 397, expanded the deductions available under the Act by incorporating a federal provision. This Court in *Koch* did not endorse the comprehensive adoption of deductions that are recognized by the Internal Revenue Code but not expressly provided for in New Jersey's Act.[4]

---

[4] The Internal Revenue Code defines what are deemed federal methods of accounting for federal income tax purposes. 26 *U.S.C.A.* § 446(a) provides that,

Indeed, no reported case decided after *Koch* construes section 5–1c to incorporate federal tax provisions that authorize deductions not expressly permitted by New Jersey's Act. To the contrary, the post-*Koch* decisions that address this issue construe section 5–1c cautiously, recognizing the fundamental distinctions between the federal and New Jersey income tax laws. As the Tax Court noted in *Aciu v. Director, Division of Taxation*, 26 *N.J.Tax* 532, 542 (Tax 2012), "*Koch* did not involve adopting federal tax concepts that were not explicitly referred to in the statute, but was instead concerned with harmonizing three specific and conflicting references" in section 5–1c. The Tax Court found "nothing in either Section 5–1c or the cases construing that section that incorporates all federal tax concepts and principles," and noted that "the intent of the Legislature in drafting the Act [was] to avoid including the loopholes and tax preferences contained in the federal tax code." *Id.* at 544.

The Appellate Division in *King, supra,* affirmed the Tax Court's holding that the worthless nonbusiness debt at issue was not a "disposition." 22 *N.J. Tax* at 632–33. In that setting, it reiterated the guiding principle that deductions recognized by federal law, but not expressly set forth in the Act, are not incorporated by section 5–1c. *Ibid.* It noted that " '[e]ven a cursory comparison of the New Jersey Gross Income Tax [Act] and the Internal Revenue Code indicate that they are fundamentally disparate statutes.' " *Id.* at 632 (quoting *Smith, supra,* 108 *N.J.* at 32, 527 *A.*2d 843). " 'The federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid the loopholes available under

---

in general, "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 *U.S.C.A.* § 446(c) then provides that the following are permissible "methods of accounting":

 (1) the cash receipts and disbursements method;

 (2) an accrual method;

 (3) any other method permitted by this chapter; or

 (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

the [Internal Revenue] Code.'" *Ibid.* (quoting *Smith, supra,* 108 *N.J.* at 32, 527 *A.*2d 843).

We agree with the Tax Court and the Appellate Division that neither section 5–1c nor *Koch* mandates application of 26 *U.S.C.A.* § 166(d)(1)(B) to the debt at issue here. In contrast to the taxpayer in *Koch, supra,* who sought to use a federal method of calculating a cost basis, 157 *N.J.* at 5, 722 *A.*2d 918, the taxpayers in this case seek a deduction expressly recognized in the Internal Revenue Code, but not expressly authorized by any provision of New Jersey's Act, on the grounds that it constitutes a federal "method of accounting" under section 5–1c. This Court in *Smith, supra,* cautioned against construing section 5–1c so as to erode the important distinctions between the Internal Revenue Code's approach to deductions and that of our Act. 108 *N.J.* at 32–33, 527 *A.*2d 843. Our tax laws must be interpreted in light of the Legislature's express intent that New Jersey tax law diverge from the federal model in significant respects. *See ibid.*

Accordingly, we agree with the Tax Court and Appellate Division that section 5–1c does not authorize a deduction for the worthless nonbusiness debt resulting from Harlan Waksal's $14,769,320 loan to his brother.

## VI.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, HOENS, and PATTERSON, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.